[Nos. 26150-9-I; 27554-2-I.   Division One.   August 31, 1992.]

JEFFREY CLEARWATER, ET AL, *Respondents*, v. SKYLINE CONSTRUCTION COMPANY, INC., ET AL, *Appellants*.

*John S. Mills,* for appellants.

*Lawrence R. Mills* and *Mills & Cogan,* for respondents.

PEKELIS, J. — Appellant Lidia Panasiuk, president and sole shareholder of the Skyline Construction Company (Skyline), appeals from the issuance of a prejudgment writ of attachment against her property and from the dismissal of her claim for wrongful attachment. Appellant Skyline appeals from the dismissal of its petition to vacate an arbitration award and from an order certifying a portion of the award as a final judgment. Respondents Jeffrey and Constance Clearwater (Clearwaters) cross-appeal from the dismissal of their fraudulent transfer claim. We affirm in part and reverse in part.

I

In November 1987, the Clearwaters and Skyline entered into a written contract in which Skyline agreed to construct a new residence for the Clearwaters. As construction neared completion, several disputes arose over Skyline's performance and the payment of various subcontractors. Eventually, by letter dated March 8, 1989, the Clearwaters terminated the contract and advised Skyline of their intention to commence legal action to recover damages resulting from Skyline's alleged breach of the contract.

On March 16, 1989, Panasiuk executed and recorded a quitclaim deed purporting to convey a certain unimproved parcel of real estate (hereinafter the property) from Skyline to herself as "a single woman". The deed recited consideration of "error by bank in misfiling deed on property to Skyline Construction Co. . . . . instead of Lidia Panasiuk".

On March 22, 1989, the Clearwaters commenced an action against Skyline, Panasiuk, and Matthew Speights, who was Skyline's construction manager and who lived with Panasiuk. The Clearwaters alleged, *inter alia*, breach of contract, negligent construction and supervision, and violations of the Consumer Protection Act. They claimed actual contract damages in excess of $83,000.

Prejudgment Writ of Attachment

On April 7, 1989, the Clearwaters applied for a prejudgment writ of attachment on the property pursuant to RCW

6.25. The Clearwaters' counsel submitted an affidavit which stated that he had been advised by Lawyers Title Company that the property was owned by Skyline. After an ex parte hearing under RCW 6.25.070(2), the trial court issued the writ of attachment and ordered the defendants to show cause why the writ should not remain on the property.

An evidentiary hearing was held on May 3 and 4, 1989, under RCW 6.25.070(3). The property was treated by the trial court as belonging to Skyline. Although Panasiuk appeared at the hearing represented by counsel, she did not advise the trial court of the March 16, 1989, conveyance from Skyline to herself.

At the conclusion of the hearing, the trial court ordered that the writ of attachment remain on the property owned by Skyline on condition that the Clearwaters post an attachment bond and promptly prosecute the case. In addition, pursuant to the terms of the contract, the trial court stayed the action pending completion of arbitration. In its written findings, the trial court concluded that the Clearwaters had established the "probable validity" of the claims alleged in the action and "probable cause to believe that an alleged ground for attachment exists" because one of the objects of the action was "to recover on a contract, express or implied."

## Arbitration Award

The Clearwaters and Skyline then entered into binding arbitration. On December 15, 1989, the arbitrator entered a net arbitration award of $17,031.29 in favor of the Clearwaters on their contract claim. The Clearwaters were also awarded $17,500 in costs and attorney fees. Further, the arbitrator determined that Skyline was responsible for approximately $17,200 in potential subcontractor claims and authorized the Clearwaters to recover from Skyline any sums paid in satisfaction of these claims or any reasonable sums paid for costs and attorney fees in defending against them.

The Clearwaters then filed a motion for an order confirming the arbitration award, lifting the stay, and directing

entry of judgment on the award. Skyline expressly stated that it did not oppose confirmation of the award or lifting the stay. However, Skyline did oppose entry of final judgment because the total amount of the award could not yet be determined since it included unresolved and unsatisfied subcontractor claims.

On January 25, 1990, the trial court entered an order confirming the arbitration award and lifting the stay. The order also granted partial summary judgment on the award, except for the portion relating to the subcontractor claims. The partial summary judgment was ordered without prejudice to further motions for judgment as to that portion of the award, and judgment was entered against Skyline on all but the subcontractor claims portion of the award. Pursuant to CR 54(b), the trial court certified in its written findings that there was "no just reason for delay in entering a final partial summary judgment" on the award. Skyline then filed a motion in this court to vacate the CR 54(b) determination. The court commissioner denied the motion, and a panel of this court denied Skyline's motion to modify that ruling.

### Motion To Discharge the Writ of Attachment

On February 5, 1990, Skyline and Panasiuk filed a motion to discharge the writ of attachment. An evidentiary hearing was held on February 23, 1990. At the hearing, Panasiuk, who also owned several apartment complexes, testified about the ownership of the property. She explained that Speights entered into a purchase and sale agreement with New Concept Homes, Inc., in February 1988 to purchase the property and then assigned his interest in the property to her. Panasiuk stated that she intended to purchase the property as a site on which to build her personal residence. She testified that her residence was designed by and constructed by Skyline. Panasiuk stated that she and Speights have been living at the residence since construction was completed.

To finance the purchase of the property and the construction of the residence, Panasiuk testified that she applied for a construction loan for herself. However, Panasiuk acknowledged that at the June 28, 1988, closing, she signed the $234,500 promissory note in her personal capacity and as "President" of Skyline.[1] She also acknowledged that she signed the deed of trust and security agreement on behalf of Skyline as "President" of Skyline. Panasiuk acknowledged further that she was aware that the statutory warranty deed conveyed the property to Skyline.

According to Panasiuk, the documents signed by her at closing had been prepared by her lender and the title company and the signature lines therein, which stated that she was signing for Skyline as president of Skyline, were incorrect. Panasiuk stated that she objected to the form of the documents, but signed them anyway because she "didn't want to slow things down" and because she believed the problem could be easily corrected later. Panasiuk testified further that she executed and recorded the March 16, 1989, quitclaim deed conveying the property to herself "to set the record straight" and because of "these problems with Clearwater."

On cross examination, Panasiuk testified that when she executed the quitclaim deed, she was aware of the Clearwaters' March 8, 1989, letter advising of their intention to commence legal action against Skyline. Panasiuk also testified that she "always" listed the property as a personal asset on her credit applications, while she had never listed the property as an asset on Skyline's credit applications. She also acknowledged that Skyline had no assets when it went out of business in late December 1989 or early January 1990.

At the conclusion of the hearing, the trial court denied Skyline's motion, determining that Skyline's ownership of

---

[1] A portion of the loan proceeds was used to pay the $70,000 purchase price of the property. The remaining loan proceeds were disbursed by Panasiuk's lender to Skyline in the form of monthly construction draws.

the property was not erroneous and that Skyline was estopped from disclaiming ownership of the property based on its failure to disclose the March 16, 1989, conveyance to Panasiuk to the court at the May 3-4, 1989, hearing.

### Fraudulent Transfer and Petition To Vacate

After learning that Skyline had purportedly conveyed the property to Panasiuk, the Clearwaters filed an amended complaint on February 21, 1990. The amended complaint alleged the violation of the Uniform Fraudulent Transfer Act (UFTA) and sought to void the purported conveyance. In their answer, filed on March 1, 1990, Skyline and Panasiuk denied the Clearwaters' allegations, counterclaimed for damages for wrongful attachment under RCW 6.25.100,[2] and petitioned to vacate the arbitration award.

The trial court dismissed Skyline's petition to vacate because the petition was not a " 'motion' as contemplated by RCW 7.04.180" and because the confirmation order was a "final judgment of the court."

In a pretrial motion, Skyline sought to reverse the dismissal of its petition to vacate the arbitration award. The motion was denied, as was Skyline's oral motion pursuant to CR 60 for relief from the January 25, 1990, final judgment order.

The parties proceeded to trial on their remaining claims — principally the Clearwaters' fraudulent transfer claim.[3] Jeffrey Clearwater testified that he first learned about the property in 1988 from a subcontractor who told him that Speights "was building a home for himself" there. Clearwater acknowledged that he had not signed the 1987 contract in reliance "on the fact that Skyline had . . . assets or something [he] could attach."

---

[2]RCW 6.25.100 provides, in pertinent part:

"In an action on [an attachment] bond, if it is shown that the attachment was wrongfully sued out, the defendant may recover the actual damages sustained and reasonable attorney's fees to be fixed by the court. . . ."

[3]The Clearwaters abandoned and the trial court dismissed for lack of evidence most of their other claims against the defendants.

Panasiuk testified that she and Speights found the property together while looking for lots on which to build a house for themselves. She stated that they paid $2,000 in earnest money after Speights entered into the agreement to purchase the property. Panasiuk submitted copies of the building permit for the property and homeowners insurance documents which identified her as the owner of the property.

Panasiuk also testified, consistent with her testimony at the February 23, 1990, hearing, that she was aware at the time of the June 28, 1988, closing that the closing documents and the deed indicated that the property was titled in Skyline. She insisted, however, that she never intended the property to be titled in Skyline. Panasiuk testified that she signed the documents for Skyline as president of Skyline because her realtor told her he would lose his commission if the transaction was not closed by the end of the month. This was corroborated by Carol Vandenberg, the listing agent for the property. Panasiuk also stated that she knew that "later on . . . I could file a quitclaim deed to correct the records". Panasiuk acknowledged that when she executed and recorded the quitclaim deed in March 1989, Skyline had only "miscellaneous" assets.[4]

According to Speights, Panasiuk had been looking to purchase property located near her parents when she found the property, which is located less than a mile from her parents' residence. He also testified that the property was never listed in any of Skyline's financial statements. He testified further that Skyline had never owned any property or built "spec" homes.

In his closing statement, Panasiuk's counsel claimed that she was entitled to damages and attorney fees incurred as a result of the Clearwaters' wrongful attachment of the property.

---

[4] In her deposition testimony, which was read into the record at trial, Panasiuk stated that Skyline "probably" did not have any assets at the time the quitclaim deed was recorded.

At the conclusion of trial, the trial court ruled in favor of Panasiuk on the Clearwaters' fraudulent transfer claim and discharged the writ of attachment against the property. However, the trial court ruled in favor of the Clearwaters on Panasiuk's wrongful attachment claim, concluding that the attachment was not wrongful because Panasiuk was "the efficient cause of any difficulties arising from the Writ of Attachment." In addition, pursuant to the arbitration award, the trial court entered a further judgment in favor of the Clearwaters for one of the subcontractor lien claims.

## II

Skyline contends on appeal that the trial court erred in denying its petition to vacate the arbitration award, in certifying a portion of the award as a final judgment, and in denying its motion for relief from the final judgment order. Panasiuk challenges the constitutionality of the statute which authorized the issuance of the prejudgment writ of attachment against her property and also contends that the trial court erred in dismissing her claim under RCW 6.25.100 for wrongful attachment. The Clearwaters cross-appeal, contending that the trial court erred in dismissing their fraudulent transfer claim.

We address first Skyline's challenge to the arbitration award itself.[5] Skyline contends that the trial court erred in denying its petition to vacate the arbitration award in favor of the Clearwaters.

In Washington, settlement of controversies by arbitration is a highly favored method of dispute resolution. *See Tombs v. Northwest Airlines, Inc.*, 83 Wn.2d 157, 161, 516 P.2d 1028 (1973). Accordingly, if requested by a party, a trial court must confirm an arbitration award unless it is vacated or modified pursuant to RCW 7.04.160 or RCW 7.04.170. RCW 7.04.150.

---

[5]Skyline's contention that the trial court erred in certifying the arbitration award as a final judgment under CR 54(b) has already been disposed by this court in the commissioner's ruling denying its motion to vacate the CR 54(b) certification and in the panel's denial of Skyline's motion to modify that ruling.

Here, the arbitration award was entered on December 15, 1989. The Clearwaters filed a motion to confirm the award on January 12, 1990. In response, Skyline expressly stated that it did not oppose confirmation of the award, and the award was confirmed. Nevertheless, in its March 1, 1990, answer to the Clearwaters' amended complaint, Skyline petitioned to vacate the award. The trial court dismissed the petition on the grounds that it did not constitute a "motion" within the meaning of RCW 7.04.180 and that the award constituted a final judgment of the court.

Skyline argues that the petition was timely filed because RCW 7.04.180 provides a 3-month period after the award is delivered to the party for filing a motion to vacate the award. We reject this argument. First, Skyline does not explain why its "petition" to vacate the award, which was contained in its *answer* to the Clearwaters' amended complaint, should be treated as a *motion* as required by RCW 7.04.180.

Furthermore, RCW 7.04.180 provides that a motion to vacate an arbitration award "shall" be made within 3 months after the award is delivered. This could be read to mean that 3 months is the *maximum* period in which a motion to vacate may be filed, not that the 3-month period is available in every situation. *See Martin v. Hydraulic Fishing Supply*, 66 Wn. App. 370, 832 P.2d 118 (1992). Generally, when a motion to confirm an arbitration award is filed within the 3-month period, the motion to vacate should also be brought at that time so that the two motions can be heard together. Although we recognize that there may be situations where this is not possible, we have no way of knowing whether such a situation was present here. Skyline has expressly declined to apprise this court of the basis for its petition to vacate the award. Thus, even if the trial court's dismissal on procedural grounds of Skyline's petition to vacate was erroneous, it is impossible for this court to determine whether Skyline suffered prejudice as a result. Because error without prejudice is not grounds for reversal,

*Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983), we cannot grant Skyline the relief it seeks.

We next address Panasiuk's contention that the trial court erred in issuing the prejudgment writ of attachment against the property. She asserts that the statutory basis for the issuance of the writ is unconstitutional because it violated her right to due process.

In Washington, a plaintiff who meets the requirements of RCW 6.25 may, at the time of commencing an action or at any time afterward before judgment, have a defendant's property attached as security to satisfy a judgment in his or her favor. RCW 6.25.020. The plaintiff must file an affidavit alleging: (1) that the attachment is sought in good faith and (2) that the affiant has a reasonable belief based on specific facts that: (a) the defendant is indebted to the plaintiff and (b) at least 1 of the 10 statutorily specified grounds is present. RCW 6.25.060.

Panasiuk contends that the statutory ground provided in RCW 6.25.030(10), "[t]hat the object for which the action is brought is to recover on a contract, express or implied", violates due process because it does not constitute an exigent circumstance. She asserts that only exigent circumstances, such as those inherent in RCW 6.25.030(1) through (9), provide a constitutional justification for prejudgment attachment. In addition, although RCW 6.25.070 provides the defendant with an opportunity for a predeprivation hearing, Panasiuk contends that only a full-blown trial on the merits of the underlying claim satisfies due process.

■ Panasiuk's contentions are based on her reading of *Lucas v. Stapp*, 6 Wn. App. 971, 497 P.2d 250 (1972) and *Rogoski v. Hammond*, 9 Wn. App. 500, 513 P.2d 285 (1973). However, neither of these cases holds that due process *prohibits* prejudgment attachment absent exigent circumstances. Rather, they hold that absent exigent circumstances, due process requires a minimum level of notice to the defendant and an appropriate hearing before the State can deprive the defendant of his or her property. *See Rogoski*, 9 Wn. App. at 506; *Lucas*, 6 Wn. App. at 974-75.

However, Panasiuk does not object to the fact that she did not receive a hearing before the original writ issued.[6] Instead, she maintains that because no exigent circumstances were present, the hearing she received on May 3-4, 1989, should have been the trial itself. Thus, Panasiuk's contention is, in essence, that no *prejudgment* attachment is constitutional absent exigent circumstances. This contention is not supported by the authorities she cites.

■ Panasiuk's second contention is that the Clearwaters' attachment of the property was "wrongful" within the meaning of RCW 6.25.100 because she prevailed on the issue of whether she or Skyline owned the property. Because the trial court determined that she owned the property and any liability of Skyline to the Clearwaters was not attributable to her, Panasiuk argues that the attachment of *her* property was clearly "wrongful". However, we hold herein that the property's purported conveyance from Skyline to Panasiuk was fraudulent. A creditor's remedies for fraudulent transfer include, *inter alia*, avoidance of the transfer or the attachment of the transferred property. *See* RCW 19.40.071. Thus, the Clearwaters' attachment of the property cannot be said to be wrongful. Accordingly, Panasiuk's assignment of error to the trial court's dismissal of her wrongful attachment claim is rendered moot by our decision, and we do not address it.

In ruling in Panasiuk's favor on the Clearwaters' fraudulent transfer claim, the trial court entered the following findings of fact and conclusions of law:

## II. FINDINGS OF FACT

. . . .

2.3 Panasiuk Intention. Panasiuk intended to purchase the Property in her own name for the purpose of building a house on the Property to be occupied by Panasiuk and Speights . . . The Real Estate Purchase and Sale Agreement for the Property was originally signed by Speights and then assigned by Speights to Panasiuk before closing

---

[6]Accordingly, we do not read Panasiuk's contention as including a challenge to RCW 6.25.070(2), which authorizes an ex parte hearing under certain circumstances.

. . . Skyline was to build a house on the Property for Panasiuk. Skyline was a building contractor that did not have a pattern of owning real estate.

### III. CONCLUSIONS OF LAW

. . . .

3.7 Transfer by Skyline to Panasiuk. The record title to the Property was transferred by Skyline to Panasiuk, the sole owner of Skyline, by Quit Claim [*sic*] Deed on March 16, 1989, *for no consideration, at a time when Skyline and Panasiuk knew there was a substantial claim by the Clearwaters and litigation with the Clearwaters was imminent, and Skyline was or became insolvent as a result of the transfer . . ..*

3.9 Deed in Error. Skyline and Panasiuk have proven by clear and convincing evidence that the record title to the Property, [*sic*] *was erroneously placed in Skyline and did not vest actual legal title in Skyline. The Property was never intended by Skyline or Panasiuk to be an asset of Skyline.* The March 16, 1989 Quit Claim [*sic*] Deed was prepared, executed, and recorded for the purpose of correcting the error in vesting record title in Skyline.

3.10 No Fraudulent Transfer. There was no deliberate or intentional fraudulent transfer of the Property by Skyline to Panasiuk. *While there are various "badges of fraud" in the transfer, including absence of consideration, immanency of litigation, apparent insolvency of the transferor, and apparent concealment, the key feature that is missing is that Skyline never held a transferable interest in the Property. The Clearwaters, therefore, have not established a fraudulent transfer under RCW 19.40.040 [sic] or RCW 19.40.051.* The Clearwaters' claim of a fraudulent transfer shall be dismissed with prejudice and without costs.

(Italics ours.)

The Clearwaters argue first that the trial court erred in concluding that because title to the property was erroneously placed in Skyline, Panasiuk could not legally convey the property from Skyline to herself. In effect, the trial court concluded as a matter of law that Skyline had never acquired a transferable interest in the property and thus had nothing to convey.

■■ To pass title effectively a deed must be delivered to and accepted by the grantee. *Juel v. Doll*, 51 Wn.2d 435, 436-37, 319 P.2d 543 (1957). The recording of a deed by the grantor

creates a presumption of delivery. *Johnson v. Wheeler*, 41 Wn.2d 246, 247-48, 248 P.2d 558 (1952). Acceptance of the deed by the grantee may be presumed if the conveyance is a benefit to the grantee. *See In re Estate of Kalt*, 16 Cal. 2d 807, 813, 108 P.2d 401, 404 (1940); 23 Am. Jur. 2d *Deeds* §§ 183-186 (1983). These presumptions may be rebutted only by clear, cogent and convincing evidence. *See Johnson*, 41 Wn.2d at 248. Further, acceptance may be demonstrated by a grantee's act or conduct after he or she has obtained knowledge of the deed. *Johnson*, 41 Wn.2d at 248; 23 Am. Jur. 2d *Deeds* § 175.

The Clearwaters contend that the statutory warranty deed in Skyline's name did effectively pass title to Skyline. They assert that Panasiuk failed to rebut the presumptions of delivery and acceptance by clear, cogent and convincing evidence. We agree.[7]

The presumptions of the deed's delivery to and acceptance by Panasiuk for Skyline were evidenced by the following: The deed identified Skyline as grantee. The deed was recorded and the conveyance benefited Skyline. Furthermore, the presumption of the deed's acceptance by Panasiuk for Skyline was reinforced by Panasiuk's conduct after she became aware that the deed recited that the property was conveyed to Skyline. Panasiuk testified that although she had intended to purchase the property for herself, she was aware at the closing that the deed purported to pass title to Skyline. Nevertheless, she signed the promissory note, the deed of trust and security agreement all on behalf of Skyline as "President" of Skyline. Panasiuk testified that she did so because she believed that the "problem", *i.e.*, title in Skyline, could be corrected later. However, this is far different from claiming that the conveyance was a nullity.[8]

---

[7]However, we do not accept the Clearwaters' merger and equitable estoppel arguments. The merger doctrine required the existence of a valid deed, which is the dispositive issue here. Equitable estoppel is inapplicable because the Clearwaters conceded that they did not rely on Skyline's assertion of ownership of the property at the time they entered into the contract with Skyline.

[8]Moreover, Panasiuk made no attempt to correct the deed until almost 9 months later when "the problems with Clearwater" arose.

Furthermore, the presumptions of delivery and acceptance were not rebutted by competent evidence. Although, as the trial court found, there was substantial evidence of Panasiuk's *subjective* intent to purchase the property for herself, such evidence was insufficient as a matter of law to overcome the presumptions of the deed's delivery to and acceptance by Panasiuk for Skyline. This evidence was especially insufficient here where Panasiuk's conduct at the time of the transaction in accepting and indeed, ratifying the "error", objectively manifested her intent to accept the deed for Skyline.

Thus, we conclude that the statutory warranty deed effectively passed title to the property to Skyline and that the trial court's conclusion of law to the contrary was erroneous. Accordingly, because Skyline held a transferable interest in the property at the time Panasiuk conveyed it from Skyline to herself, we must next determine whether the conveyance constituted a fraudulent transfer under the UFTA, RCW 19.40.[9]

Under the UFTA, a transfer may be fraudulent under any one of the following circumstances. First, a transfer made by a debtor with actual intent to hinder, delay, or defraud any creditor is fraudulent. RCW 19.40.041(a)(1). The trial court may consider 11 factors in determining whether the requisite intent was present. RCW 19.40.041(b). Second, a transfer made without adequate consideration is constructively fraudulent, *i.e.*, without regard to the actual intent of the parties, where any one of the following exists: (1) the debtor was left by the transfer with unreasonably small assets for a transaction or the business in which the debtor was engaged, RCW 19.40.041(a)(2)(i); (2) the debtor intended to incur, or believed he or she would incur, more debts than the

---

[9]We reject the Clearwaters' assertion that Skyline never lost legal title to the property because the conveyance to Panasiuk was invalid. The Clearwaters contend that the quitclaim deed was not properly executed under RCW 64.04.020, which requires, *inter alia*, that the deed be signed by the grantor, because Panasiuk failed to sign *as president of Skyline*. This contention is without merit. *See* 26 C.J.S. *Deeds* § 34 (1956) (grantor who signs by wrong name may not avoid deed where its execution by grantor is shown).

debtor would be able to pay, RCW 19.40.041(a)(2)(ii); or (3) the debtor was insolvent at the time or as a result of the transfer, RCW 19.40.051(a).

■■ There are no reported cases in Washington under the UFTA which establish the quantum of evidence required to prove a fraudulent transfer. However, under the Uniform Fraudulent Conveyance Act (UFCA), which preceded the UFTA and which contained essentially similar provisions, proof of actual intent to defraud was to be demonstrated by "clear and satisfactory proof". In constrast, proof of a fraudulent conveyance on the other statutory grounds was to be shown by "substantial evidence". *See Sparkman & McLean Co. v. Derber*, 4 Wn. App. 341, 349, 481 P.2d 585 (1971).[10] Because the UFTA substantially tracks with the UFCA, we see no reason why the proof requirements under the UFTA should be different from those which were required under the UFCA. Thus, we adopt the foregoing distinction between the quantum of evidence required to prove actual intent to defraud and that required to prove a fraudulent transfer on the other grounds provided under the UFTA.

Here, the trial court concluded that notwithstanding the presence of several "badges of fraud", the conveyance was not made with the intent to defraud the Clearwaters, but rather was made for the purpose of correcting the deed which erroneously placed title in Skyline. This conclusion was based on the trial court's finding that Panasiuk intended to acquire the property for herself and, hence, did not convey the property to herself personally in order to defraud the Clearwaters.

Where the trial court has weighed the evidence, this court's review is limited to determining whether the findings are supported by substantial evidence and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. *Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 157, 776 P.2d 676 (1989). Here, the

---

[10]Other jurisdictions made this same distinction under the UFCA. *See, e.g., In re Erin Food Servs., Inc.*, 117 Bankr. 21, 25-26 (Bankr. D. Mass. 1990).

trial court's finding regarding Panasiuk's intent in purchasing the property is supported by substantial evidence, and this finding in turn supports the trial court's conclusion that the conveyance was made without any intent to defraud the Clearwaters.

The trial court also entered written findings of fact and conclusions of law purporting to address the Clearwaters' assertion that the conveyance was not only intentionally fraudulent, but also constructively fraudulent. In conclusion of law 3.7, the trial court determined that the conveyance was made "for no consideration" and that "Skyline was or became insolvent as a result of the [conveyance]", but then in conclusion of law 3.10 concluded, inexplicably, that the Clearwaters "have not established a fraudulent transfer under RCW 19.40.040 [sic] or RCW 19.40.051."

█ The trial court's conclusion cannot stand in light of its own determinations and because the record here demonstrates by uncontroverted evidence that the conveyance was constructively fraudulent under RCW 19.40.041(a)(2)(ii). Panasiuk conveyed the property from Skyline to herself without receiving reasonably equivalent value in return and while believing that Skyline would incur a debt, i.e., a judgment against it, which it would be unable to pay. See RCW 19.40.041(a)(2)(ii). The quitclaim deed recited no consideration, and Panasiuk did not pay any amount to Skyline as consideration for the conveyance. Further, Panasiuk acknowledged that at the time she executed and recorded the deed, she was aware of the Clearwaters' letter advising of their intention to commence legal action against Skyline.

█ Panasiuk does not dispute these facts, but asserts that Skyline received adequate consideration in return for the conveyance by virtue of her repayment of the promissory note held by her lender. Under the UFTA, "reasonably equivalent value" is required in order to constitute adequate consideration. RCW 19.40.041(a)(2). Furthermore, the 1985 comment to the UFTA states that:

"[v]alue" is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors. Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition.

Uniform Fraudulent Transfer Act § 3 comment, 7A U.L.A. 650 (1984). Panasiuk's repayment of the note benefited her lender, but was of no benefit to the Clearwaters. Thus, we conclude that Panasiuk's repayment of the note did not constitute adequate consideration under the UFTA as a matter of law.

Accordingly, we reverse the trial court's dismissal of Clearwaters' fraudulent transfer claim and remand this case to the trial court for entry of an order pursuant to RCW 19.40-.071. In addition, we award the Clearwaters their costs and reasonable attorney fees on appeal.[11] *See Leen v. Demopolis*, 62 Wn. App. 473, 485, 815 P.2d 269 (1991), *review denied*, 118 Wn.2d 1022 (1992).

In sum, (1) the trial court's dismissal of Skyline's petition to vacate the arbitration award and its order certifying the partial summary judgment as a final judgment are affirmed; (2) Skyline's constitutional challenge to RCW 6.25.030(10) is rejected; (3) the dismissal of the Clearwaters' fraudulent transfer claim is reversed; and (4) the dismissal of Panasiuk's wrongful attachment claim is affirmed.

WEBSTER, A.C.J., and AGID, J., concur.

Reconsideration denied October 9, 1992.

Review denied at 121 Wn.2d 1005 (1993).

---

[11]The Clearwaters also request an order directing Skyline and Panasiuk to pay the costs and attorney fees they (the Clearwaters) will incur on remand. However, this is not only speculative at this point, but a matter within the province of the trial court.