# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CATHERINE S. SHUBECK, | No. 54532-2-II |
| Respondent, | |
| v. | |
| JOHN R. SHUBECK, SHELLY A. WILLIAMS, | UNPUBLISHED OPINION |
| Appellants. | |

LEE, C.J. — John Shubeck and Shelly Williams[1] appeal the trial court's amended judgment on remand from this court. The amended judgment establishes the extent of Shelly's liability in the event John becomes delinquent in spousal support payments due to Catherine Shubeck. Shelly's liability stems from being the beneficiary of fraudulently transferred marital assets owned by her and John. John and Shelly argue that the trial court erred in calculating Shelly's liability because it failed to apportion the relative contributions of their traceable separate funds used to purchase marital assets and to value certain marital assets at the time the assets were fraudulently transferred. John and Shelly also argue that the trial court erred in concluding that all of their marital assets were community property.

We hold that the trial court did not err in its value determinations of the fraudulently transferred assets when calculating the extent of Shelly's liability and that the trial court did not

---

[1] We refer to parties by their first name for clarity and intend no disrespect.

err in concluding that the marital assets were community property. Accordingly, we affirm the trial court's amended judgment.

## FACTS

### A.    BACKGROUND

We previously reviewed the trial court's determination that John and Shelly fraudulently transferred John's interest in marital assets to avoid a lifetime spousal support obligation to Catherine. We issued our opinion on March 19, 2019, affirming the trial court's determination that John and Shelly's marital assets were community property and that they engaged in fraudulent transfers of their marital assets. *Shubeck v. Shubeck*, No. 50979-2-II, slip op. at 2 (Wash. Ct. App. Mar. 19, 2019) (unpublished).[2] However, we held that "the language in the judgment regarding Shelly's liability is unclear" and remanded the matter to the trial court to "clarify Shelly's liability and to modify the judgment accordingly." *Id.* This appeal arises from the trial court's amended judgment on remand.

### 1.    Events Leading To First Appeal

The facts relevant to this appeal are outlined in our previous opinion.

Catherine and John were married from 1982 to 2003. *Id.* at 3. They divorced in 2003 in New Jersey. *Id.*

In 2009, John and Shelly were married in Olympia, Washington. *Id.* Shortly after they got married, John began transferring property he had an interest in to Shelly. *Id.*

---

[2] https://www.courts.wa.gov/opinions/pdf/D2%2050979-2-II%20Unpublished%20Opinion.pdf.

On September 27, 2012, a New Jersey court entered an order requiring John to pay lifetime spousal support to Catherine. *Id.* John made payments from 2012 until early 2015, when he then stopped paying spousal support and fell into arrears. *Id.*

On January 19, 2016, Catherine registered the 2012 New Jersey spousal support order in Washington. *Id.* Ten days later, John and Shelly executed a separate property agreement making Shelly the separate property owner of all their marital assets except for wine, golf clubs, a piano, and other musical items left with John. *Id.* at 3-4.

On March 7, 2016, a superior court in Washington entered a judgment in the amount of $56,902.13 against John for unpaid spousal support owed to Catherine. *Id.* at 4. Two days after the judgment was entered, Shelly filed for legal separation from John. *Id.*

In April 2016, Catherine filed an action against John and Shelly, alleging that John and Shelly fraudulently transferred their marital assets so that John could avoid his lifetime support obligation to Catherine. *Id.*

After a bench trial on Catherine's fraudulent transfer claim, the trial court entered findings and conclusions. *Id.* The trial court made the following findings: (1) that John and Shelly purchased or owned the following assets during their marriage—investment accounts with Vanguard and UBS, the 6th Lane property, a Dodge Ram truck, a boat and trailer, a Lexus, their bank accounts, the Pilchuck property, and the house they built on the Pilchuck property; (2) that John and Shelly entered into a prenuptial agreement that provided for, among other things, the bank accounts to be separate property with no comingling; (3) that John and Shelly failed to abide by the terms of their prenuptial agreement because they failed to maintain separate and distinct bank accounts, and instead commingled funds extensively and used funds in those accounts to

3

make joint purchases and pay community debts; and (4) that, after entry of the 2012 New Jersey order, John "panicked" and began transferring marital assets to Shelly. *Id.* at 5-8.

The trial court also entered findings establishing the value of the marital assets at the time of the property transfers, including: (1) $22,000.00 for the Ram truck; (2) $24,719.49 for the Vanguard investment account and $23,768.20 for the UBS investment account; and (3) $180,000.00 for the Pilchuck property, but with John and Shelly using their collective resources to increase the value of this property, its current value was over $1,000,000.00. *Id.* at 7-8.

The trial court concluded that all of the assets that John and Shelly acquired during their marriage were community property. *Id.* at 9. The trial court also concluded that John and Shelly had engaged in a fraudulent transfer of their marital assets to avoid paying Catherine's spousal support award. *Id.* at 10-11.

The trial court entered judgment in the amount of $67,524.53 against John and Shelly. *Id.* at 13. The trial court further ordered that John's and Shelly's purported property transfers were void to the extent it interfered with Catherine's right to collect her spousal support award, the judgment, or any supplemental judgment entered in this case. *Id.*

John and Shelly filed a motion for reconsideration and to amend judgment, which the trial court denied. *Id.* John and Shelly appealed the trial court's order denying their motion for reconsideration and amendment of judgment. *Id.*

2.      First Appeal of the Trial Court's Judgment

In the first appeal, John and Shelly argued that the trial court's findings of fact did not support the court's conclusions of law regarding the community property character of their marital assets. *Id.* at 16. We disagreed and held that "[t]he trial court's conclusions of law are supported

4

by the findings that all of John's and Shelly's marital assets were community property." *Id.* We

reasoned that

> [t]he trial court properly concluded that John and Shelly violated the terms of their prenuptial agreement and separate property agreements which made the agreements unenforceable. The trial court's conclusion that John "had an interest in the assets at the time of transfer, and continues to have an interest . . . now" is also supported by the findings. CP at 241. The trial court also properly concluded that John and Shelly "failed to overcome the heavy presumption that the assets acquired during [their] marriage were community in nature," and that "[n]one of the assets in question were ever the separate property of [Shelly]" are supported by the findings. CP at 241. Because the conclusions of law are supported by the findings, we hold that John's and Shelly's arguments regarding the character of their marital property fail.

*Id.* at 18. We held that the trial court's findings were verities on appeal. *Id.* at 15.

John and Shelly next argued that the trial court's conclusions of law were not supported by

the findings that they engaged in a fraudulent transfer of their marital assets with actual intent to

hinder, delay, or defraud Catherine. *Id.* at 19. We disagreed and held that "[t]he trial court properly

concluded that there was clear and satisfactory evidence that John's transfers of the marital assets

to Shelly constituted a fraudulent transfer made with the actual intent to hinder, delay, or defraud

Catherine." *Id.* at 21.

John and Shelly also argued that the extent of Shelly's liability was unclear under the trial

court order holding her liable for any supplemental judgment if John stopped paying Catherine

spousal support. *Id.* We agreed and remanded to the trial court with directions "to clarify

[Shelly's] liability and modify the judgment accordingly." *Id.* at 22, 24. We affirmed the

remainder of the trial court's rulings.

B.    REMAND PROCEEDINGS

On March 20, 2020, the trial court held a hearing on remand to determine the extent of Shelly's potential liability if John stopped paying Catherine spousal support. At the hearing on remand, John and Shelly attempted to relitigate the characterization of their marital assets, arguing that their assets should be apportioned based on the traceable contributions of their separate property. The trial court declined John's and Shelly's invitation to relitigate the characterization of their marital assets and instead limited the issue on remand to Shelly's potential liability, as we directed.

A central issue on remand was the value of the Pilchuck property in calculating Shelly's liability. Catherine argued that the trial court had broad discretion in determining what remedy should be afforded to a creditor and contended that the trial court should assign the value of the Pilchuck property at $1,000,000.00. John and Shelly argued that the Pilchuck property should be valued at $185,000.00—the value at the time of transfer.

The trial court agreed that it had broad discretion in determining what remedies should be afforded to a creditor. In exercising its broad discretion, the trial court valued the Pilchuck Property at $1,000,000.00. The trial court reasoned that,

> Mr. Shubeck quitclaimed his interest in the 6th Lane property to Ms. Williams. The equity in that home, the evidence was and continues to be, was utilized to construct a new home on property that has an exact address but was referred to at trial as the Pilchuck property. Mr. Shubeck's resources, including his income, was also used to construct that home. The Court found that the Pilchuck property was estimated to be over $1 million.

Verbatim Report of Proceedings (VRP) at 21. The trial court then incorporated the values assigned to the marital assets in its findings of fact. In calculating Shelly's liability, the trial court stated

6

that John's "transfer of a truck and investment accounts total an additional $70,487.69," added that amount to the value of the Pilchuck property, and found that Shelly became the beneficiary of approximately $1,070,487.69 in fraudulently transferred marital assets. VRP at 21. Since these assets were all deemed community property, John and Shelly were assigned a one-half interest which amounted to $535,243.85. And since the principal judgment in the amount of $67,524.53 for Catherine's spousal support claim had already been paid by John and Shelly, the trial court credited Shelly with half of the amount, which totaled $33,762.26. As a result, the trial court issued an amended judgment limiting Shelly's potential liability for any supplemental judgment resulting from John's failure to pay Catherine's spousal support at $501,481.58.

John and Shelly appeal the trial court's amended judgment.

ANALYSIS

A.    TRIAL COURT PROPERLY DETERMINED THE VALUE OF THE PILCHUCK PROPERTY

John and Shelly argue that the trial court erred "in not applying the law to identify the value of the assets at the time of the transfers." Br. of Appellant at 21. Specifically, John and Shelly argue that the superior court erred by not calculating the value of the Pilchuck property at the time of transfer when determining the extent of Shelly's liability. We disagree.

John's and Shelly's argument requires us to interpret statutory language in the Uniform Fraudulent Transfer Act (UFTA).[3] We review questions of statutory interpretation de novo. *Money Mailer, LLC v. Brewer*, 194 Wn.2d 111, 116, 449 P.3d 258 (2019). The primary purpose

---

[3] RCW 19.40, formerly known as UFTA, is now known as the Uniform Voidable Transactions Act. LAWS OF 2017, ch. 57, § 13. Because the transfers here occurred before July 23, 2017, we apply the UFTA. RCW 19.40.905(2). Therefore, for the purposes of this opinion, we cite to former chapter 19.40 RCW.

of statutory interpretation is to determine and enforce legislative intent. *Id.* at 117. "'[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" *Wright v. Lyft*, 189 Wn.2d 718, 723, 406 P.3d 1149 (2017) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

A fraudulent transfer under the UFTA is (1) any transfer made by a debtor with actual intent to hinder, delay, or defraud a creditor; or (2) a transfer made without adequate consideration leaving the debtor with unreasonably small assets, insolvent, or intending to incur more debts than he or she can pay. Former RCW 19.40.041(a); *see Clearwater v. Skyline Constr. Co.,* 67 Wn. App. 305, 322, 835 P.2d 257 (1992), *review denied*, 121 Wn.2d 1005 (1993).

Former RCW 19.40.071 provides remedies for creditors adversely affected by a fraudulent transfer. In any action for relief against a fraudulent transfer, the creditor, subject to certain limitations described in former RCW 19.40.081, may obtain:

> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 6.25 RCW;
> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
> (i) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
> (ii) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
> (iii) Any other relief the circumstances may require.

Former RCW 19.40.071(a). Former RCW 19.40.081(b) provides that "the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less." And former RCW

19.40.081(c) provides that, "[i]f the judgment under subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, *subject to adjustment as the equities may require*." (Emphasis added.)

The plain language of former RCW 19.40.071(a)(3)(iii) provides the trial court with broad discretion to fashion a remedy based on the circumstances before the court. For judgments based on the value of a transferred asset, the trial court will generally limit the judgment to the value of the asset at the time of transfer. Former RCW 19.40.081(c). However, the plain language of the statute allows the trial court to exercise its broad discretion by declining to limit judgment to the value of the asset at the time of transfer and instead adjust the value of the asset "as the equities may require." Former RCW 19.40.081(c).

Here, the trial court properly exercised its broad discretion by adjusting the value of the Pilchuck property in its amended judgment. *See* former RCW 19.40.081(c). The trial court found that the value of the Pilchuck property was approximately $180,000.00 at the time of the fraudulent transfer. The trial court also found that John and Shelly used their collective resources to increase the value of the Pilchuck property to approximately $1,000,000.00. In entering the amended judgment, the trial court exercised its discretion and made an equitable adjustment to the value of the Pilchuck property. Because the trial court has broad discretion to fashion a remedy based on the circumstances before the court, and because the trial court may decline to value an asset at the time of transfer when the equities require, the trial court did not err in adjusting the value of the Pilchuck property to $1,000,000.00. Former RCW 19.40.071(a)(3)(iii); former RCW 19.40.081(c). Accordingly, we affirm the trial court's amended judgment.

B.    LAW OF THE CASE DOCTRINE BARS JOHN'S AND SHELLY'S SEPARATE PROPERTY CLAIMS

John and Shelly argue that "[t]he trial court erred in concluding that all funds were community funds and all assets purchased using those funds were community property." Br. of Appellant at 27. John and Shelly also contend that the trial court erred when it failed to trace their separate funds and establish "relative contributions" for the assets in question. Br. of Appellant at 27. We hold that the trial court properly declined to consider the issue on remand. We also decline to address the merits of John's and Shelly's arguments on appeal.

1.    Legal Principles

The law of the case doctrine applies to successive proceedings in the same case. *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 55, 366 P.3d 1246 (2015), *review denied*, 185 Wn.2d 1038 (2016). Specifically, the doctrine "'stands for the general rule that a question of law decided by the [appellate] court on a former appeal becomes the law of the case, in all its subsequent stages, and will not ordinarily be considered or reversed on a second appeal when the facts and the questions of law presented are substantially the same.'" *Id.* at 54 (internal quotation marks omitted) (quoting *In re Pooled Advocate Trust*, 2012 SD 24, ¶ 23, 813 N.W.2d 130, 139).

Three main principles arise from the law of the case doctrine: (1) a trial court ruling maintains binding force during later stages of the trial, (2) an appeals court ruling carries conclusive effects at trial on remand, and (3) an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. *Id. at* 56. The law of the case doctrine, depending on the situation, can be mandatory or discretionary. *Id*. at 56-57.

The remand rule forbids a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case. *Id*. at

56. In other words, a trial court does not have the discretion to disregard or contradict a holding of the appellate court. *Id*. at 57.

On the other hand, we may, at our discretion, revisit an earlier decision that we issued in the same case. RAP 2.5(c)(2); *Folsom v. County of Spokane*, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988). Under RAP 2.5(c)(2), we may review the propriety of an earlier decision in the same case when the decision is clearly erroneous and when justice would best be served by review. *Roberson v. Perez*, 156 Wn.2d 33, 42, 123 P.3d 844 (2005); *Morpho Detection, Inc. v. Dep't of Revenue*, 8 Wn. App. 2d 672, 682-83, 440 P.3d 1009 (2019).

### 2. Law of the Case Doctrine Bars Relitigating Character of Property

Here, the law of the case doctrine applies to bar John's and Shelly's attempts to relitigate the characterization of their fraudulently transferred marital property. *See Lodis*, 192 Wn. App. at 56. John and Shelly had already challenged the trial court's determination that all their marital assets were community property in their first appeal. *Shubeck*, slip op. at 16. We rejected John's and Shelly's challenge to the trial court's characterization of the marital property, affirmed the trial court's characterization of the fraudulently transferred marital property as community property, and remanded the judgment on the sole issue of clarifying the extent of Shelly's liability for any supplemental judgment resulting from John's failure to pay Catherine's spousal support. *Id*. at 21-22.

On remand, the trial court strictly limited the proceeding to determine the extent of Shelly's liability. Because the law of the case doctrine prohibited John and Shelly from relitigating issues already decided by the appellate court in the same case, and because the trial court did not have discretion to reconsider issues decided by the appellate court, whether the trial court erred in

characterizing John's and Shelly's marital property was not at issue in the proceedings on remand. *See Lodis*, 192 Wn. App. at 57-58. Accordingly, the trial court properly declined John's and Shelly's request to relitigate the community property issue on remand.

Although the trial court did not have discretion to revisit the community property issue on remand, we do have the discretion in the second appeal. *See* RAP 2.5(c)(2); *Roberson*, 156 Wn.2d at 42; *Morpho*, 8 Wn. App. 2d at 682-83. However, we decline to exercise our discretion to revisit our opinion in the first *Shubeck* appeal.

Here, John and Shelly provide no argument that our holding in the first *Shubeck* appeal, stating that all marital assets were properly characterized as community property, was clearly erroneous. Rather, they again argue that the trial court erred in its characterization of community property. Because John and Shelly fail to argue that our opinion in the first *Shubeck* appeal is clearly erroneous, we decline to consider their arguments in this second appeal regarding the characterization of property and tracing of funds. *See* RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley,* 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that an appellant waives an issue when he fails to argue it in his opening brief); *Milligan v. Thompson*, 110 Wn. App. 628, 636 n.2, 42 P.3d 418 (2002). Accordingly, we affirm the trial court's amended judgment.

C.     ATTORNEY FEES AND COSTS ON APPEAL

Both parties request attorney fees and costs on appeal. John and Shelly do not cite any ground for which they are entitled to an award of attorney fees and costs. Catherine requests attorney fees and costs pursuant to RAP 18.1(a) and RCW 26.18.160. We deny John and Shelly's request and grant Catherine's request.

We may grant an award of reasonable attorney fees on appeal to a party that requests it in its opening brief, and as long as applicable law provides for such an award. RAP 18.1(a). RCW 26.18.160 provides that "[i]n any action to enforce a support or maintenance order under this chapter, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees."

Here, because John and Shelly failed to comply with RAP 18.1(a) and do not prevail in this appeal, we deny their request for attorney fees and costs on appeal.

As for Catherine's request for attorney fees and costs on appeal, because Catherine maintained this action to enforce a registered judgment in Washington for support, and because Catherine is the prevailing party in this appeal, Catherine is entitled to an award of reasonable attorney fees and costs on appeal under RCW 26.18.160.[4] Accordingly, we grant Catherine's request for attorney fees and costs on appeal.

## CONCLUSION

Because the trial court did not err in its value determinations of the fraudulently transferred marital assets when calculating the extent of Shelly's liability and because the fraudulently transferred marital assets were community property, we affirm the trial court's amended judgment.

---

[4] Catherine also requests reasonable attorney fees and costs under RAP 18.9(a) alleging that John's and Shelly's appeal is frivolous. Because we grant Catherine's reasonable attorney fees and costs pursuant to RAP 18.1(a) and RCW 26.18.160, we decline to consider whether John's and Shelly's appeal is frivolous.

No. 54532-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Cruser, J.