[No. 37083. Department Two. July 30, 1964.]

ANDREW G. WEBSTER, *Appellant,* v. DERRIL RODRICK *et al.,* *Respondents.**

*George C. Butler* and *Butler & Yencopal,* for appellant.

WEAVER, J.—From March 9, 1957, through September 30, 1961, plaintiff Webster, a physician and surgeon practicing

*Reported in 394 P. (2d) 689.

in Kennewick, employed defendant wife, Marian H. Rodrick, as his office nurse, receptionist, and bookkeeper. During this period she misappropriated funds belonging to plaintiff.

Plaintiff sought reimbursement from Mrs. Rodrick individually and from the community composed of her and her husband. Mrs. Rodrick

". . . admits taking small amounts of cash from time to time in an amount unknown to her but not believed to exceed the total of $1,500.00."

At trial the amount and time of the defalcations were established by a detailed audit by a certified public accountant. The trial court, sitting with an advisory jury, found that $14,273.76 had been embezzled and

". . . applied by the defendant Marian H. Rodrick to expenditures for the use and benefit of the family. . . ."

The court concluded as a matter of law that the funds were misappropriated for the purpose of benefiting the community, that the funds inured to the community's benefit, and that the community was ". . . unjustly enriched at the expense of the plaintiff . . . ."

In December, 1962 (prior to judgment), defendants filed a declaration of homestead upon the property occupied by them as a residence. January 10, 1963, a money judgment for the sum embezzled was entered against Mrs. Rodrick individually and against the community. In addition, the judgment, designated as a decree, provided that

". . . plaintiff have an equitable lien upon the property of the defendants to secure and enforce payment of the aforesaid money judgment, which said equitable lien is hereby established and imposed upon the separate interests of defendant Marian H. Rodrick and the interest of the community . . . in the property . . . described as follows: . . . [Defendants' residence and other property not pertinent to this appeal are described.]"

Although defendants appealed from the decree, their appeal was dismissed. Therefore the decree binding the community and the court's findings of fact are now final.

Following entry of the decree, plaintiff had a writ of execution issued and attempted to have sold defendants' family residence upon which the decree had impressed an equitable lien. Defendants moved to quash the writ of execution. Plaintiff countered with a motion attacking the validity of the claimed homestead exemption in accordance with RCW 6.12.090.

The trial court denied defendants' motion to quash the writ of execution. It also denied plaintiff's motion to declare defendants' homestead invalid. Plaintiff appeals from the latter. Defendants have not filed an appellate brief.

■ The homestead exemption statutes are based upon Art. 19, § 1 of the state constitution. We have held in a plethora of decisions that the homestead statutes are favored in the law and should be liberally construed. *Lien v. Hoffman,* 49 Wn. (2d) 642, 649, 306 P. (2d) 240 (1957). They do not protect the rights of creditors; they are in derogation of such rights. *First Nat. Bank of Everett v. Tiffany,* 40 Wn. (2d) 193, 242 P. (2d) 169 (1952). However, running as a thread through our former decisions involving the homestead exemption is the requirement that it must be filed "in good faith." *Barouh v. Israel,* 46 Wn. (2d) 327, 332, 281 P. (2d) 238 (1955). The homestead exemption must be used as a shield to protect the homesteader and his dependents in the enjoyment of a domicile. We find no decision in this jurisdiction where the court has permitted the judgment debtor to use the statutes as a sword to protect a theft.

Plaintiff has cited us no previous Washington decisions, and we have found none, directly in point. We are aware of *Brown v. Manos,* 140 Wash. 525, 250 Pac. 36 (1926) (not cited by plaintiff). Therein plaintiff secured a judgment against defendant for the wrongful and fraudulent use of partnership funds. Although defendant's homestead exemption was upheld, the decision is not apposite because there was no showing that the person claiming the homestead had purchased the property with funds stolen from the judgment creditor. Further, the record indicates that the property had been purchased by defendant long before

the facts constituting the judgment creditor's cause of action arose.

 Ordinarily a money judgment becomes a lien upon real property of a judgment debtor from the day the judgment is rendered. RCW 4.56.190; RCW 4.56.200. In *Lien v. Hoffman, supra,* we pointed out that when the homestead exemption is established *prior* to judgment, as in the instant case, this court has held that the judgment does not become a lien upon the property claimed as a homestead except in certain specified situations fixed by statute (RCW 6.12.100), which need not be noticed at this time. *Barouh v. Israel, supra; Traders' Nat. Bank of Spokane v. Schorr,* 20 Wash. 1, 54 Pac. 543, 72 Am. St. Rep. 17 (1898).

 It is significant, therefore, that the trial court, by its decree, impressed the property in question with an equitable lien to secure and enforce payment of the money judgment based upon the embezzlement of funds. The reason is obvious: as stated by the Supreme Court of Florida in *Jones v. Carpenter,* 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409 (1925):

". . . the doctrine of equitable liens would never have come into existence if it were true that one who claims such a lien must first show a lien at law. Equitable liens become necessary on account of the absence of similar remedies at law. . . ."

We find this supported by the Restatement, Restitution § 210:

"(1) Where a person wrongfully mingles money of another with money of his own and with the mingled fund acquires property, the other is entitled to an equitable lien upon the property to secure his claim for reimbursement."

 Turning to the question of fraud and the homestead, we find the rule determinative of our conclusion well stated and supported by decided cases in the annotation: "Remedy of one whose money is fraudulently used in the purchase or improvement of real property," 43 A.L.R. 1415 at 1446, as follows:

"It is well settled that one who has purchased real property with funds of another, under circumstances which

818

ordinarily would entitle such other person to enforce a constructive trust in, or an equitable lien against, the property, cannot defeat the right to enforce such trust or lien on the ground that it is homestead property and exempt from the claims of creditors. . . ."

The homestead exemption statute cannot be used as an instrument of fraud and imposition. *Jones v. Carpenter*, 90 Fla. 407, 106 So. 127 (1925), 43 A.L.R. 1409; *Mack v. Marvin*, 211 Ark. 715, 202 S.W. (2d) 590 (1947); *American R. Express Co. v. Houle*, 169 Minn. 209, 210 N.W. 889 (1926), 48 A.L.R. 1266; *Long v. Earle*, 277 Mich. 505, 269 N.W. 577 (1936); *In re Guardianship of Munsell*, 239 Iowa 307, 31 N.W. (2d) 360 (1948); *Duhart v. O'Rourke*, 99 Cal. App. (2d) 277, 221 P. (2d) 767 (1950); *First Nat. Trust & Sav. Bank of San Diego v. Cerveny*, 93 Cal. App. (2d) 255, 208 P. (2d) 1018 (1949).

It is usually easier to trace a grand theft, or a one-transaction defalcation, in and out of a common fund than it is to trace a multitude of pilferings extending over more than four and one-half years, because currency is fungible. With this in mind it is not unusual that the trial court found:

"Plaintiff has failed to prove the dates of the various acts of misappropriations by the defendant Marian H. Rodrick, except that the periods in which said acts were committed were established by the proof and are now found to have been as follows:

| Period | Amount Misappropriated | Interest |
|---|---|---|
| 3/9/57 – 3/28/57 | $ 31.50 | $ 11.01 |
| 3/29/57 – 12/31/57 | 1,310.00 | 390.90 |
| 1/1/58 – 9/30/58 | 1,739.00 | 446.09 |
| 10/1/58 – 12/31/58 | 737.50 | 178.35 |
| Calendar year 1959 | 3,325.88 | 603.67 |
| Calendar year 1960 | 4,290.24 | 521.24 |
| 1/1/61 – 9/30/61 | 2,839.64 | 213.73 |
| | $14,273.76 | $ 2,364.99" |

We note that the trial court adopted its figures from a certified public accountant's detailed audit, which was introduced into evidence.

May 9, 1958, defendants purchased the lot in question for $1,099.00. October, 1958, they completed payment for

the lot. By that date $3,080.50 of plaintiff's money had been commingled and used as community funds.

In 1959 defendants built a house on the lot, using $3,835.88 of community funds with which the defalcations had been commingled. They gave a mortgage, dated October 25, 1959, to the Equitable Life Assurance Society for $12,200 payable $105.29 per month. By the end of 1959 $7,143.88 of plaintiff's money had been taken and commingled with community funds; $3,325.88 had been pilfered in 1959. During 1960 an additional $4,290.24 of plaintiff's funds had found their way surreptitiously to defendants. During that year defendants paid the mortgage payments of $105.29 per month and installed a driveway costing $416.00.

It would be unrealistic to say that plaintiff's embezzled funds were not used to purchase and improve the property in question. The funds have been traced with all the accuracy possible under the circumstances.

The order denying plaintiff's motion to declare defendants' homestead declaration invalid is reversed and the cause remanded with directions to grant the motion.

It is so ordered.

OTT, C. J., DONWORTH and FINLEY, JJ., and EDGERTON, J. Pro Tem., concur.