[No. 41392-2-II.   Division Two.   May 15, 2012.]

JAMES C. CASTERLINE, *as Guardian/Conservator, Respondent*, v. DENISE H. ROBERTS ET AL., *Appellants.*

*Darrel S. Ammons Jr.*, for appellants.

*Michael A. Claxton* (of *Walstead Mertsching PS*), for respondent.

¶1 ARMSTRONG, J. — Denise Roberts used money from Theresa Roberts' trust (her mother's trust) to purchase property and build a home in Kelso for herself and her husband, John Wilson. When the court appointed a guardian to investigate her mother's assets, Denise[1] transferred her interest in the Kelso property to Wilson without consideration; she also transferred property in California to her brother-in-law without consideration. The guardian sued to set aside the Kelso property transfer and to impose an equitable lien on the property for the money Denise took from the trust. Denise and Wilson appeal the trial court's decision in the guardian's favor, arguing that (1) the trial court erred by imposing an equitable lien on the Kelso property because Denise had discretion to use trust funds for Theresa's care, maintenance, and support; (2) the court erred in finding Denise's property transfer to be fraudulent; and (3) the homestead exemption protects their interest in the property. Finding no error, we affirm.

## FACTS

¶2 Theresa Roberts is in her mid 80s. She has three children: John Teaman and Marta Vignola, who live in

---

[1] We refer to Theresa Roberts and Denise Roberts by their first names for clarity.

California, and Denise, who lives in Washington. Denise is married to John Wilson. Theresa formed a revocable living trust in 1995 and amended it in January 2004 to name Denise as trustee.

¶3 In May 2005, Denise and Wilson purchased unimproved property in Kelso on which to build a home; they testified that their intent was to have Theresa live in the home with them. They designed the home to have four bedrooms, a three-car garage, a mother-in-law unit, and four bathrooms. Denise and Wilson agreed to pay $450,203.55 for the home.

¶4 In April 2006, Theresa sold her home in California, with net proceeds of approximately $640,000. The sale proceeds were initially put in an account in Denise's name but later transferred to Theresa's trust account. Denise took $153,000 from the trust account to pay toward the Kelso property purchase.

¶5 After the California property sale, Denise moved Theresa to an assisted living facility in Seaside, Oregon.[2] Denise did not immediately inform Teaman or Vignola of the move. Three weeks after the move, Denise e-mailed Vignola a new address for Theresa. Denise admitted, however, that she sent Vignola the wrong address.

¶6 On August 1, 2006, Teaman and Vignola petitioned the Clatsop County Court (Oregon) to appoint a temporary guardian for Theresa. The court appointed Nancy Sells as "visitor" for Theresa.[3] Report of Proceedings (RP) (July 15, 2010) at 145. On August 14, Sells filed her report, recommending that the court appoint a guardian because of

---

[2] In 2006, two physicians reported to Denise that Theresa had been suffering from dementia for two or three years and was "mentally incapable to make responsible decisions concerning her welfare and management of her assets." Report of Proceedings (July 15, 2010) at 159.

[3] A "visitor" describes a person appointed by the court to interview and evaluate a respondent or protected person. ORS 125.005. The law requires the court to appoint a visitor to make a report before a guardian is appointed for an adult respondent. ORS 125.150.

Theresa's dementia and a conservator[4] to protect her assets. The court then appointed Teaman and Vignola as temporary coguardians and temporary cotrustees.

¶7  On the day Sells filed her report, Denise conveyed her California condominium to her brother-in-law, Sterling Clayton Wilson, for no consideration. One day later, on August 15, she conveyed the Kelso property to her husband, again for no consideration. Approximately seven months later, Sterling reconveyed the California property to Denise for no consideration and, on the same day, Denise sold the property to another person. In November 2006, the Oregon court appointed James Casterline as conservator of Theresa's estate.

¶8  Casterline sued Denise and Wilson, alleging that Denise breached her fiduciary duties of loyalty, prudence, and good faith. Casterline alleged that Denise and Wilson were unjustly enriched by Denise's transfers from the trust and asked the court to impose a $153,000 equitable lien on the Kelso property.

¶9  The trial court found that Denise tried to hide her mother and prevent access to her. The trial court also found that the property transfers through quitclaim deeds for no consideration were fraudulent and specifically noted that (1) the transfers were to insiders, (2) the transfers constituted substantially all of Denise's assets and left her insolvent, (3) Denise continued to enjoy the use of the properties, and (4) the transferees paid no consideration. The court ruled that because Denise fraudulently transferred the Kelso property to Wilson, the homestead exemption did not apply to the property and the transfer should be set aside. The court imposed an equitable lien of $153,000 on the property.

---

[4] A "conservator" is the legal term used in Oregon for a person acting as a guardian of the estate. RP (July 15, 2010) at 11.

## ANALYSIS

### I. Equitable Lien

¶10 Denise and Wilson argue that the trial court erred by ordering an equitable lien because Denise had discretion to use trust funds for Theresa's care, maintenance, and support.

¶11 We review a trial court's decision following a bench trial by asking whether substantial evidence supports the findings and whether the findings support the court's conclusions of law. *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 242-43, 23 P.3d 520 (2001). Substantial evidence is that quantity of evidence sufficient to persuade a rational, fair-minded person that a finding is true. *Hegwine v. Longview Fibre Co.*, 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006). We consider unchallenged findings to be verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). We review questions of law de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). Where the trial court mislabels a conclusion of law as a finding of fact, we review the conclusion de novo. *Hegwine*, 132 Wn. App. at 556.

¶12 The trial court concluded that Denise breached her fiduciary duty because she (1) lacked authority to use trust assets for herself and her husband, (2) may have intended to use the funds for Theresa's benefit but did not, and (3) failed to protect Theresa's investment in the home by granting her a security interest in the home. Denise argues that she had authority to use the trust funds for Theresa's maintenance and thus did not breach her fiduciary duty.

¶13 Denise has not assigned error to any finding of fact. Generally, we treat unchallenged findings of fact as verities on appeal, not subject to review. *See Cowiche Canyon*, 118 Wn.2d at 808. Denise also has not assigned error to any of

the trial court's legal conclusions. In spite of this imperfect presentation, we consider Denise's claim that "[a]s successor trustee, Denise Roberts had the unfettered discretion to use trust funds for the benefit of the Trustor." Br. of Appellant at 8.

¶14 Theresa's trust authorized Denise to use the trust funds as follows:

> *Distribution of Principal for Support* . . . if at any time in the discretion of the Trustee the Trustor [Theresa] should be in need of funds for her proper medical care, dental care, maintenance and support, the Trustee may, in the Trustee's discretion, pay to the Trustor, or apply for her benefit, such sums from the principal of the Trust Estate as the Trustee deems necessary or advisable for such purposes. . . .

Br. of Appellant at 7.

¶15 Substantial evidence supports the trial court's findings as to how Denise used Theresa's trust funds. In July 2006, Denise used $153,000 of Theresa's funds to build the home. Theresa never benefitted from the investment and Denise took no steps to protect the trust's investment in the home. Nor did Denise attempt to segregate the trust investment from her personal investment. Later, when the court-appointed visitor reported that Theresa needed a guardian and conservator, Denise conveyed all of her interest in two properties to her brother-in-law and her husband for no consideration. We conclude that substantial evidence supports the trial court's findings.

¶16 Denise's argument appears to be that the trial court's findings do not support a legal conclusion that she breached her fiduciary duty as trustee. The trial court's breach of a fiduciary duty discussion is mischaracterized as a finding of fact. Findings of fact are determinations of "whether . . . evidence show[s] that something occurred or existed." *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978). Conclusions of law are "determination[s] . . . made by a

process of legal reasoning from facts in evidence." *State v. Niedergang*, 43 Wn. App. 656, 658-59, 719 P.2d 576 (1986) (citing *Moulden & Sons, Inc.*, 21 Wn. App. at 197 n.5). Where a conclusion of law is mislabeled as a finding of fact, we review it as a conclusion of law. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Because the trial court's determination that Denise breached her fiduciary duty was legal reasoning, we treat it as a conclusion of law, which we review de novo. *See Hegwine*, 132 Wn. App. at 556.

¶17 A trustee owes beneficiaries the "highest degree of good faith, care, loyalty and integrity." *Esmieu v. Schrag*, 88 Wn.2d 490, 498, 563 P.2d 203 (1977). " 'It is the duty of a trustee to administer the trust in the interest of the beneficiaries.' " *Cook v. Brateng*, 158 Wn. App. 777, 785, 262 P.3d 1228 (2010) (quoting *Tucker v. Brown*, 20 Wn.2d 740, 768, 150 P.2d 604 (1944)). Where the trust confers discretion on a trustee to carry out the trust, we review the trustee's actions for an abuse of discretion. *Templeton v. Peoples Nat'l Bank of Wash.*, 106 Wn.2d 304, 309, 722 P.2d 63 (1986). Here, Denise had discretion to use trust assets to provide for Theresa as stated in the revocable living trust agreement under "Distribution of Principal for Support." The trust's clear intent was to benefit Theresa during her life.

¶18 But a trustee who engages in self-dealing or who mingles trust funds with the trustee's private funds breaches her fiduciary duty of loyalty, even where the trustee eventually replaces the funds and the trust suffers no loss. *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 506, 844 P.2d 403 (1993) (citing 90 C.J.S. *Trusts* § 270b, at 349 (1955)); *In re Marriage of Petrie*, 105 Wn. App. 268, 276, 19 P.3d 443 (2001) ("[A] trustee's commingling of personal funds and assets with the funds and assets of a beneficiary is a breach of fiduciary duty because it creates a conflict of interest for the trustee.").

¶19 Denise argues that she used the trust assets to provide maintenance for her mother but that "[t]he base-

ment apartment was not used only because the Oregon conservator would not allow [Theresa] to use it." Br. of Appellant at 10. Even if we accept that Denise intended to care for Theresa in the new home, she still breached her duty by mingling trust assets with her personal funds and by failing to protect the trust assets with, for example, a security interest in the home. These protections are particularly important here; Denise knew of Theresa's fragile and deteriorating health and that Theresa would likely need full-time, professional nursing care. Finally, by transferring her assets, including the trust's investment, arguably to prevent the trust from recovering its investment, Denise was acting in direct conflict with her duty to protect the trust assets. *Petrie*, 105 Wn. App. at 276.

¶20 We conclude that the trial court's findings of fact support its conclusion of law that Denise breached her fiduciary duty.

## II. Uniform Fraudulent Transfer Act

¶21 Denise asserts that the trial court erred in setting aside her transfer of the Kelso property to Wilson. We disagree.

■ ■ ¶22 Under the Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW, a transfer is fraudulent if the debtor acts with intent to hinder, delay, or defraud a creditor or transfers "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." RCW 19.40.041(a)(2). A debtor violates the UFTA by transferring an asset as defined in the UFTA. But the term "asset" does not include (1) property to the extent it is encumbered by a valid lien or (2) property to the extent it is generally exempt under nonbankruptcy law. RCW 19.40-.011(2). Although the burden of proof rests upon the party seeking to set aside a fraudulent transfer, the burden shifts to the defendant to prove good faith when the consideration for the transfer is shown to be grossly inadequate. *Workman v. Bryce*, 50 Wn.2d 185, 189, 310 P.2d 228 (1957).

¶23 Denise argues that the Kelso property is not an asset under UFTA because it is a homestead. She does not challenge the trial court's finding that she fraudulently transferred property. Moreover, she cites no Washington case or statute to support her argument. *See* RAP 10.3(a)(6) (only issues which are supported by argument and legal authority are considered by this court on appeal). She cites only cases from other jurisdictions, which are not controlling, to support her contention that the homestead exemption should protect the property. *See, e.g., McCone County Fed. Credit Union v. Gribble,* 2009 MT 290, 352 Mont. 254, 255, 216 P.3d 206; *Duran v. Henderson,* 71 S.W.3d 833 (Tex. App. 2002); *Fid. Nat'l Title Ins. Co. v. Schroeder,* 179 Cal. App. 4th 834, 101 Cal. Rptr. 3d 854 (2009); *In re Roca,* 404 B.R. 531 (D. Ariz. 2009).

¶24 In *Clearwater v. Skyline Construction Co.,* 67 Wn. App. 305, 835 P.2d 257 (1992), Division One of this court upheld a fraudulent conveyance finding where Skyline Construction contracted to build a residence for the Clearwaters. *Clearwater,* 67 Wn. App. at 308. After several disputes, the Clearwaters informed Skyline they intended to commence legal action. *Clearwater,* 67 Wn. App. at 308. About a week later, Panasiuk, the president and sole shareholder of Skyline, conveyed the Skyline property to herself, individually, for no consideration. *Clearwater,* 67 Wn. App. at 308. Panasiuk believed that Skyline would incur a debt stemming from a judgment against it. *Clearwater,* 67 Wn. App. at 322. The court affirmed the trial court's finding of a fraudulent transfer. *Clearwater,* 67 Wn. App. at 323.

¶25 Here, Denise conveyed the property to Wilson without receiving any consideration. *See* RCW 19.40-.041(a)(2). The trial court concluded that the transfer was fraudulent under both RCW 19.40.041 and RCW 19.40.051. The evidence supports this conclusion.

## III. Automatic Homestead Exemption

¶26 Denise argues, nonetheless, that she is entitled to the automatic homestead exemption.

¶27 Under RCW 6.13.070, the homestead is automatically exempt from execution on judgments against the homestead's owner in an amount up to $125,000. *See* RCW 6.13.030. A "homestead" is "real or personal property that the owner uses as a residence." RCW 6.13.010(1).

¶28 But homestead protection does not extend to equitable liens imposed when the homestead claimant purchases the homestead property with wrongfully obtained funds. *Fed. Intermediate Credit Bank of Spokane v. O/S Sablefish*, 111 Wn.2d 219, 229-30, 758 P.2d 494 (1988) (citing *Webster v. Rodrick*, 64 Wn.2d 814, 818-19, 394 P.2d 689 (1964); *Pinebrook Homeowners Ass'n v. Owen*, 48 Wn. App. 424, 430, 739 P.2d 110 (1987)).

¶29 In *Webster*, 64 Wn.2d at 818-19, the defendant embezzled from the plaintiff and then used the misappropriated funds to acquire real estate and make improvements to it. The court reasoned that "[t]he homestead exemption statute cannot be used as an instrument of fraud" and refused to allow the defendants to use the homestead exemption to protect property purchased with the judgment creditor's funds. *Webster*, 64 Wn.2d at 818.

¶30 Denise asserts that "the *Webster* case is limited to cases of fraud or wrongdoing. There are no such findings in this case." Br. of Appellant at 18. The trial court found, however, that Denise fraudulently transferred the Kelso property essentially to shield the trust money she had wrongfully taken from Theresa's trust.

¶31 Denise next argues that because the Washington legislature adopted the UFTA after the Supreme Court decided *Webster*, the *Webster* holding has been "implicitly overruled." Br. of Appellant at 18-19. But cases decided after the legislature enacted the UFTA have upheld imposing

equitable liens on real property acquired by fraudulently obtained funds, citing to *Webster*. *See, e.g., Fed. Intermediate Credit Bank*, 111 Wn.2d at 229-30.

¶32 Moreover, the *Restatement*'s discussion of trust property states that the "policy in favor of exempting certain property from the claims of creditors is not applicable where the property is wrongfully acquired with the property of another" and provides the following illustration:

> 8. A, trustee for B, wrongfully takes $2000 of the trust funds and purchases a homestead which by law is not subject to attachment or levy on execution by his creditors. B can follow the money into the property so acquired and compel A to hold it in constructive trust for him, or can enforce an equitable lien upon the property.

RESTATEMENT (SECOND) OF TRUSTS § 202 cmt. d (1959).

¶33 Here, Denise violated her fiduciary duty to the trust by investing trust funds in an asset that did not benefit the trust. And the homestead exemption is intended to "protect the homesteader and his dependents in the enjoyment of a domicile," not property an owner fraudulently transfers to avoid the legal consequences of a wrongful act. *Webster*, 64 Wn.2d at 816. Thus, the trial court properly ruled that the homestead exemption did not apply to the $153,000 that Denise took from Theresa's trust. We hold that the trial court did not err in ruling as a matter of law that Theresa's trust was entitled to a $153,000 equitable lien on the property.

¶34 Affirmed.

PENOYAR, C.J., and QUINN-BRINTNALL, J., concur.