2016 AUG -8  AM 9: 40


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| KEYES, LLC, | No. 73455-5-I |
| Respondent, | |
| v. | DIVISION ONE |
| APEX ENTERPRISES 2014, LLC dba Apex Adult Family Homes; MYRNA CONTRERAS; and GEORGE P. TREJO III, and all other occupants, | UNPUBLISHED OPINION |
| Appellants. | FILED: August 8, 2016 |

LEACH, J. — Myrna Contreras appeals the trial court's entry of judgment against her in this unlawful detainer action.[1] She contends that her landlord, Keyes LLC, pursued eviction to retaliate against her. She claims that she cured her default for unpaid rent by timely paying Keyes and that she raised a genuine issue of material fact as to whether Keyes breached the implied warranty of habitability. And she contends that the commissioner failed to consider the evidence she submitted at her show cause hearing. Because Contreras does not support her assignments of error with adequate legal argument and citations to authority or provide an adequate record, we affirm.

---

[1] Contreras and codefendant George Trejo III are proceeding pro se. Pro se litigants are "bound by the same rules of procedure and substantive law as attorneys." Westberg v. All-Purpose Structures Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

Background

Apex Enterprises LLC leased a house in Kent, Washington, from Keyes LLC on March 31, 2014. Apex's owner, Myrna Contreras, moved into the house two weeks later.[2]

The lease is not part of the appellate record. Only those parts of it read aloud at the trial court hearing are in the record. Keyes LLC's owner, Michael Keyes, testified that the lease described itself as a commercial lease, that the parties intended for Contreras to operate the house as an adult family home, that Contreras was to pay $3,000 in rent on the tenth of each month, that late payments would incur a 10 percent fee, and that Contreras would obtain insurance for the house.[3]

The lease also provided that Keyes would connect the house to the Kent sewer system.[4] The house is connected only to a septic tank. Keyes testified that the State does not license adult family homes that are not connected to sewer but allows one resident to live in an adult family home without a sewer.

---

[2] We refer to the defendants collectively as Contreras and to the plaintiff as Keyes.

[3] The house was the former home of Keyes's mother, who at the time lived in a different adult family home. Before signing the lease, Keyes and Contreras discussed an arrangement under which Contreras would pay no rent, Keyes's mother would live in the house, and Contreras would care for her as part of running an adult family home. Contreras rejected that agreement, viewing it as illegal, and the lease did not contain terms related to it. Keyes's mother died soon after the parties signed the lease.

[4] Keyes testified that the lease did not set a time frame for him to connect the sewer, but that he had been "moving forward" on it.

The parties intended for only one adult-family-home resident to stay in the house until Keyes connected the sewer.

Keyes asserted that Contreras also breached the lease by operating the house as a boardinghouse rather than an adult family home. The parties agreed that Contreras could accept one international student as a boarder. Contreras acknowledged that she took on three. In March 2015, the City of Kent sent Contreras a correction notice requiring her to obtain a home business license.

Contreras did not pay rent for eight months, May to December 2014. She thus accrued $2,400 in late fees.[5] On January 23, 2015, Keyes posted a 20-day notice to cure. This demanded that Contreras pay the $2,400 in late fees, provide proof of insurance, and repair and repaint the front door.[6]

Contreras did not pay the fees, obtain insurance, or repair the door within 20 days of receiving the notice.[7] She testified that the City of Kent was considering allowing her to host the three students without a business license.

On March 5, 2015, Keyes posted a three-day notice to pay rent or vacate. Contreras attempted to pay Keyes on March 8, but Keyes told her he was out of town and would return the next day. When he came to the house the next morning, Contreras handed him an envelope containing $3,000 in money orders.

---

[5] $2,400 is 10 percent of eight months' rent.

[6] Keyes testified that Contreras painted the front door "extremely poorly" and in hot pink, "a color that I do not approve." The commissioner found this a "technical violation" but gave it little weight.

[7] The commissioner did not rule on whether it was possible for Contreras to obtain the full insurance the lease required but found that she breached the agreement by not obtaining any kind of insurance.

He took the envelope and went outside. He returned 10 minutes later, said his attorney told him not to accept the rent, and threw the envelope on the ground.

Keyes filed an unlawful detainer action against Contreras. A commissioner conducted a show cause hearing the next month.

After hearing testimony from Keyes and Contreras, the commissioner found that Contreras did not comply with the 20-day notice. She did not pay $2,400.00 in late fees, obtain the required insurance, repair the front door, or stop operating as a boardinghouse. He also found that Contreras did not quit the premises within 20 days of the notice. Based on these facts, the commissioner concluded that Contreras was in default, Contreras was guilty of unlawful detainer, and the lease should be terminated. The commissioner entered judgment against Contreras for $12,636.94, terminated the lease, and directed the clerk to issue a writ of restitution restoring possession to Keyes.

## Standard of Review

An unlawful detainer show cause hearing is a summary proceeding to decide the right to possession of the property during a pending lawsuit.[8] On review, the appellate court reviews the record to see whether substantial evidence supports the trial court's findings of fact and, if so, whether those findings support the conclusions of law.[9] Substantial evidence is enough evidence to persuade a fair-minded person of the truth of the declared premise.[10]

---

[8] Carlstrom v. Hanline, 98 Wn. App. 780, 788, 990 P.2d 986 (2000).
[9] Casterline v. Roberts, 168 Wn. App. 376, 381, 284 P.3d 743 (2012).
[10] Casterline, 168 Wn. App. at 381.

-4-

We consider unchallenged findings of fact to be verities on appeal.[11] Unchallenged conclusions of law become the law of the case.[12]

"Passing treatment of an issue or lack of reasoned argument is insufficient to merit appellate review."[13]

### Analysis

Contreras makes four assignments of error. Because Contreras does not provide either an adequate record or adequate briefing for this court to review those assignments of error, we affirm the commissioner's ruling.

The record does not contain the parties' lease. Nor does Contreras provide the 20 exhibits that her counsel apparently provided to the commissioner on the day of the hearing. Both parties ask us to interpret the lease based on portions read aloud at the hearing by counsel, witnesses, and the commissioner.

As the appellant, Contreras has the burden to provide a record adequate to permit review of the issues she raises on appeal.[14] Without this record, she has no basis to challenge the sufficiency of the evidence to support the trial court's factual determinations. The insufficient record here precludes review of the assigned errors relating to the commissioner's factual findings.[15]

---

[11] Casterline, 168 Wn. App. at 381.
[12] King Aircraft Sales., Inc. v. Lane, 68 Wn. App. 706, 716-17, 846 P.2d 550 (1993).
[13] Christian v. Tohmeh, 191 Wn. App. 709, 728, 366 P.3d 16 (2015), review denied, No. 92837-1 (Wash. June 29, 2016).
[14] Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988).
[15] Bulzomi v. Dep't of Labor & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994).

In addition, Contreras's brief does not conform to the Rules of Appellate Procedure. RAP 10.3(a)(5) requires that "[r]eference to the record must be included for each factual statement." RAP 10.4(f) requires that references to the record "designate the page and part of the record."[16] Contreras's brief only loosely complies with these rules; she supports few factual statements with references to the record, and many of the references she provides are inaccurate.

First, Contreras challenges the commissioner's grant of a writ of restitution entitling Keyes to retake the property. She asserts that the commissioner erred in finding unlawful detainer because Keyes violated the Residential Landlord-Tenant Act of 1973 (RLTA)[17] by retaliating against her assertion of rights as a residential tenant.

Contreras's briefing of this issue does not apply legal authority to the facts of her case. In particular, she identifies no evidence to counter the commissioner's finding that the lease, formed between two companies for the tenant to operate an adult family home, was a commercial one. Without the lease, we cannot review its terms. The portion of the lease testified to at the hearing provides substantial evidence for the commissioner's finding that it was commercial.

---

[16] See Bulzomi, 72 Wn. App. at 525-26.
[17] Ch. 59.18 RCW.

The record provided does not show that the commissioner should have applied the retaliation provisions of the RLTA to Contreras. Even if the RLTA applied, Contreras does not explain what rights she asserted under it.[18] Nor does she provide evidence that she asserted those rights or that retaliation was a substantial motivating factor for Keyes in posting the 20-day notice to cure.[19] Thus, Contreras's brief and the record are inadequate for us to review this issue.[20]

Second, Contreras contends that she cured her default by tendering $3,000 to Keyes on March 9, 2015. She asserts that Keyes accepted the payment when he took the envelope containing it and did not return it until 10 minutes later, after speaking to his lawyer. Keyes responds that he did not accept the rent and, even if he had, that the lease contains a nonwaiver provision.

In general, when a tenant fails to pay rent and the landlord accepts later rental payments, that acceptance does not cure the tenant's other breaches.[21] Instead, "the landlord has merely waived a right under the statute to declare

---

[18] Contreras's declaration in the record asserts that Keyes did not demand payment of late fees until she refused to modify the lease to allow him to rent out part of the house (a kitchen, extra room, and garage).

[19] See Port of Longview v. Int'l Raw Materials, Ltd., 96 Wn. App. 431, 444, 979 P.2d 917 (1999) (requiring evidence that protected activity was "a substantial or motivating factor in the Port's adverse decision to seek eviction").

[20] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3(a)(6).

[21] MH2 Co. v. Sun M. Hwang, 104 Wn. App. 680, 684, 16 P.3d 1272 (2001).

forfeiture for the nonpayment."[22] That waiver does not extend to "a continuing breach or any future noncontinuing breaches."[23] The landlord can thus declare forfeiture for a new breach or an older, continuing one.[24]

Even if we assume that Keyes accepted payment of the late fees by taking the envelope, he would not have waived other, continuing breaches of the lease, including Contreras's failure to obtain any insurance and operating the property as a boardinghouse. The unchallenged findings of fact would still support the commissioner's conclusions of law.

Third, Contreras asserts that the commissioner abused his discretion by not setting the matter for trial. She suggests that a trial is necessary to determine whether Keyes breached the implied warranty of habitability, which she claims would give her a defense to unlawful detainer.[25] Contreras does not support this assignment of error with citations to the record or adequate legal argument. Therefore, we decline to consider it.[26] We also note, again, that the commissioner made a supported finding that the lease here was commercial, not residential; thus, the implied warranty of habitability would not apply.[27] And even if it did, Contreras cites no evidence that Keyes breached the implied warranty of

---

[22] MH2 Co., 104 Wn. App. at 684.

[23] MH2 Co., 104 Wn. App. at 684.

[24] MH2 Co., 104 Wn. App. at 684.

[25] A tenant in a residential unlawful detainer action may raise a defense based on a landlord's breach of the implied warranty of habitability. Foisy v. Wyman, 83 Wn.2d 22, 31-32, 515 P.2d 160 (1973).

[26] RAP 10.3(a)(6).

[27] In Washington, the implied warranty of habitability does not generally extend to commercial leases. Olson v. Scholes, 17 Wn. App. 383, 392, 563 P.2d 1275 (1977).

habitability. The commissioner did not abuse his discretion in declining to set a trial.

Finally, Contreras contends that the commissioner did not read or consider documents she submitted at the hearing. She cites no evidence for this assertion. The record shows that Contreras did not submit those documents until the hearing, but that the commissioner accepted them as exhibits and reviewed them in the limited time he had. Contreras did not make the exhibits part of the record, so we cannot tell whether they would have raised an issue for trial.

Keyes requests an award of attorney fees on appeal based on a lease provision. Because the record does not include that provision, we deny the request.

Conclusion

We affirm the trial court.

_____Leach, J._____

WE CONCUR:

_____Dwyer, J._____      _____Appelwick, J._____