# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| AMY LYNN CANN, f/k/a SOLIS, | No.  54162-9-II |
| Appellant, | |
| v. | |
| HERNANDO MATINEZ SOLIS | UNPUBLISHED OPINION |
| Respondent. | |

LEE, C.J. — Amy L. Cann (fka Solis) appeals the trial court's final orders denying her relocation petition and modifying her parenting plan with Hernando M. Solis.  Cann argues that the trial court erred by denying the relocation petition without making the required finding that the detrimental effects outweighed the benefits of the relocation.  Cann also argues that the trial court improperly found that she acted in bad faith and erred by considering her failure to give proper notice as a factor in denying her relocation petition.  Further, Cann argues that the trial court erred by modifying the parenting plan without giving her the opportunity to maintain the current parenting plan by not relocating.  Finally, Cann argues the trial court abused its discretion by failing to recuse itself.

We hold that the trial court did not err and affirm the trial court's rulings.

FACTS

A.    BACKGROUND

Cann and Solis were married from 2014 to 2018.  On January 22, 2019, Cann and Solis filed an agreed permanent parenting plan for their daughter, F.L.S., with the Kitsap County

Superior Court. This plan included a schedule for F.L.S. while she was under school age and after she began school.

On June 28, Cann filed a notice of her intent to relocate F.L.S. with the Jefferson County Superior Court. In her notice, Cann stated she intended to move to Maple Falls, WA from Port Ludlow, WA on June 27. Cann claims she gave notice within 5 days of the date that she found out she planned to move because she did not know about the move in enough time to give 60 days' notice and could not reasonably postpone the move. On June 27, Cann mailed this notice to Solis. Solis received the notice on July 1.

On July 2, Solis sought a temporary order preventing the move and requiring the return of F.L.S. because Cann had already moved with F.L.S. on July 1 and Solis had received late notice without reasons to justify the delay. On the same day, Solis filed an objection to the relocation. In this objection, Solis noted that he received the notice of relocation after Cann had already moved with F.L.S.

On July 5, Solis moved for contempt against Cann because Cann had denied him scheduled residential time with F.L.S. Solis and Cann had agreed that F.L.S. could be with Cann on Memorial Day weekend and be with Solis on the July 4th weekend, but Cann denied Solis the scheduled time. Additionally, Cann had denied Solis phone privileges with F.L.S. The trial court denied the motion for contempt due to procedural errors.

On July 12, the trial court denied the immediate relocation of F.L.S. The trial court found that Cann had violated the Relocation Act by already moving to Whatcom County. The trial court determined that F.L.S. should remain in Jefferson County and ordered,

> [T]he child F.L.S. shall reside with [Solis] commencing 10:00 am Saturday 7/13/2019. [Cann] may have visitation with [F.L.S.] on such dates [and] times

2

designated by [Solis]. This order shall remain in effect until further order of the court.

Clerk's Papers (CP) at 55.

On July 22, Cann moved for reconsideration of the trial court's ruling changing the primary residential parent from Cann to Solis and affording Solis absolute discretion in determining Cann's residential time with F.L.S. After a hearing on the motion for reconsideration, the trial court modified its order. The trial court ruled,

> If [Cann] comes back to Jefferson County, the original parenting plan will remain in effect. Whatever date she comes back, whether it be today, next week, whatever, before we have a trial, if she comes back to Jefferson County, the existing parenting plan remains in effect that was done in Kitsap or wherever it was. So long as she's not back here, if she stays up in Maple Falls, the parenting plan that was made is simply flipped. The child's going to be with Mr. Solis, and she gets the visitation schedule that he had, except for a change, and that is that—okay, the change will be, the mother's time will be from Friday at 5:00 p.m. to Sunday at 5:00 p.m., instead of 3:00 p.m. Friday to 9:00 a.m. Sunday.

Verbatim Report of Proceedings (VRP) (August 8, 2019) at 55.

On September 3, Solis filed a petition to modify the parenting plan. Solis requested that he become the primary residential parent.

On October 11, Cann filed an "Affidavit of Prejudice" requesting the disqualification of Judge Harper of the Jefferson County Superior Court because Cann would be "unable to obtain a fair proceeding." CP at 124. The trial court found this notice untimely under RCW 40.12.050(b) because in counties with only one resident judge, the notice of disqualification must be filed no later than the day on which the case is called to be set for trial, and the court, on August 13, had already set a trial date for the case.

No. 54162-9-II

B.       TRIAL COURT'S FINDINGS AND ORDERS

Following a contested trial, the trial court entered findings of fact and a final order on the

relocation.[1]  In its order, the trial court stated,

> Based on the factors listed below, the Court concludes that the planned move would
> cause more harm to the child than good to the child and the person who wants to
> move.

CP at 191.  The trial court made specific findings regarding the factors required under RCW

26.09.520.[2]

_____

[1]  Cann does not assign error to any of the trial court's findings of fact as required by RAP 10.3(g).
Therefore, the trial court's findings of fact are verities on appeal.  *In re Marriage of Laidlaw*, 2
Wn. App. 2d 381, 386, 409 P.3d 1184, *review denied*, 190 Wn.2d 1022 (2018).  Accordingly, we
do not discuss the evidence presented at the contested trial.

[2]  RCW 26.09.520 provides,

> The person proposing to relocate with the child shall provide his or her
> reasons for the intended relocation.  There is a rebuttable presumption that the
> intended relocation of the child will be permitted.  A person entitled to object to the
> intended relocation of the child may rebut the presumption by demonstrating that
> the detrimental effect of the relocation outweighs the benefit of the change to the
> child and the relocating person, based upon the following factors.  The factors listed
> in this section are not weighted.  No inference is to be drawn from the order in
> which the following factors are listed:
> (1) The relative strength, nature, quality, extent of involvement, and
> stability of the child's relationship with each parent, siblings, and other significant
> persons in the child's life;
> (2) Prior agreements of the parties;
> (3) Whether disrupting the contact between the child and the person seeking
> relocation would be more detrimental to the child than disrupting contact between
> the child and the person objecting to the relocation;
> (4) Whether either parent or a person entitled to residential time with the
> child is subject to limitations under RCW 26.09.191;
> (5) The reasons of each person for seeking or opposing the relocation and
> the good faith of each of the parties in requesting or opposing the relocation;
> (6) The age, developmental stage, and needs of the child, and the likely
> impact the relocation or its prevention will have on the child's physical,

Finding of fact 5.a addresses the parties' relationships. The trial court made the following finding regarding each parent,

> [Cann] has moved multiple times in the last year. She has made doubtful allegations about [Solis]. She has subjected the child to two invasive medical exams and interviews—none of which resulted in any concerns about [Solis]. She has made allegations to [Child Protective Services (CPS)] about [Solis] all of which have been determined to be unfounded. She has requested multiple welfare checks from law enforcement—none of which proved to cause any concern to law enforcement.

> [Solis] has been stable and has been in the same home since the child was born. The child is bonded with [Solis] and her half-brother. (She is also bonded with her half-sister, the child of [Cann].)

> [Cann] has been the primary parent, but [Solis] has done a lot of parenting functions. The child spent five of fourteen nights with the father under the residential schedule they followed. [Solis] is consistent and steady. [Solis] consistently tried to be a good parent and assure that the child has a good relationship with all of her family members.

CP at 191-92. The trial court also found that Solis never retaliated against Cann's numerous attempts to interfere in his time with F.L.S., and that Cann created an unstable situation for F.L.S. by moving to Maple Falls before she received permission to relocate. The trial court found that the child's relationships weighed in favor of Solis.

---

educational, and emotional development, taking into consideration any special needs of the child;
    (7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
    (8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
    (9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
    (10) The financial impact and logistics of the relocation or its prevention; and
    (11) For a temporary order, the amount of time before a final decision can be made at trial.

5

In finding of fact 5.b, the trial court found that the parties had prior agreements about co-parenting, including an agreement the child would go to school in Kingston. Cann had stated her desire to relocate during the divorce. Solis objected and assisted Cann in obtaining housing in Port Ludlow. The trial court found that the parties' agreements weighed in favor of Solis.

In finding of fact 5.c, the trial court found that disrupting F.L.S.'s contact with Cann would not be more harmful than disrupting her contact with Solis. The trial court based this finding on the disruptions that Cann created by moving and denying Solis time with F.L.S. In contrast, the trial court found that Solis "has a great, stable, and consistent home with things for the kids to do." CP at 193. And the trial court found that if relocation was denied "both parents will be able to spend significant time with the child." CP at 193. The trial court found that contact with the parents weighed in favor of Solis.

In finding of fact 5.d, the trial court found that limiting factors were inapplicable because neither parents' residential time was restricted under RCW 26.09.191.

In finding of fact 5.e, the trial court found that Cann's "reasons for moving were not given in good faith." CP at 193. The court found that none of the reasons Cann gave for moving were true. The trial court also found that Cann specifically filed the notice of relocation at a time when Solis had planned a cruise and would have difficulty filing a timely objection. Further, the trial court found that Cann "needlessly called CPS and the Sheriff's department for welfare checks and alleged spanking incidents about [Solis]." CP at 194. The trial court also found that Cann was not candid with the court on several occasions. The court found "that [Cann] has not acted in good faith and has no legitimate reasons to relocate." CP at 194.

In finding of fact 5.f, the trial court found that Solis' reasons for objecting to the relocation were made in good faith. Specifically, the trial court found,

> [Solis] wants meaningful time with his daughter, and he wants her to live in a stable and good environment. He wants her to attend a good school. He wants her to attend daycare, preschool, and counseling for socializing purposes and for her well-being. He will make those things happen. [Cann] has not done that since she sought to relocate.

CP at 194.

In finding of fact 5.g, the trial court found "that allowing the move would negatively and detrimentally affect the child's physical, educational, and emotional development, considering her age, developmental stage, and needs." CP at 195. The trial court based this finding on the fact that the instability created by Cann's move has prevented F.L.S. from being enrolled in pre-school. And the trial court found "negative actions by [Cann] are negatively affecting the child's relationship and time with [Solis], and they are indicative of her overall stability." CP at 195. The trial court further found that "[f]requent, regular contact" was best for F.L.S. CP at 195. And the trial court found that Cann's "negative behavior has been escalating and the court finds it likely that they will have a negative effect on the child and her relationship with her father." CP at 195.

In finding of fact 5.h, the court found that both locations provided a comparable quality of life. The court also found that the schools in the Kitsap area appeared better and Solis lived in a good neighborhood.

In finding of fact 5.i, the trial court found, "if relocation with the child is permitted there are insufficient options and arrangements available to foster and continue [Solis'] relationship with the child." CP at 195. Because of the distance between the two areas, Solis would be limited to video contact with F.L.S. and would not be able to be involved in her school or activities.

7

In finding of fact 5.j, the trial court found that relocation was not a reasonable option for Solis. In contrast, the court found that staying in the Kitsap area appeared to be a viable alternative for Cann.

Finally, in finding of fact 5.k, the trial court found that Cann's claims regarding the financial benefits of the relocation were not supported by the evidence. Furthermore, the relocation would impose significant financial burdens on the parties because of the travel difficulties and expenses.

After weighing the factors, the trial court found that the planned move would cause more harm to F.L.S. than good to F.L.S. and Cann. The trial court denied Cann's petition to relocate with F.L.S.

In finding of fact 6, the trial court found that,

> Regardless of whether [Cann] continues to reside in Whatcom County (where she is currently residing), the Court finds that the evidence presented at trial makes clear that the child's present environment (with the mother) is detrimental to the child's physical, mental, or emotional health, and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child if she lives primarily with the father. Therefore and pursuant to RCW 26.09.260(2)(c), the court is modifying the Parenting Plan entered on January 22, 2019 as reflected in the Final Parenting Plan presented and entered on the date that this Order is signed.

CP at 197. The new parenting plan designated Solis as the primary residential parent. Cann was provided residential time with F.L.S. every other weekend.

Cann appeals.

## ANALYSIS

A.    STANDARD OF REVIEW

In reviewing the trial court's decision to grant or deny a petition for relocation, we determine whether the trial court's decision was manifestly unreasonable or based on untenable

grounds or reasons. *In re Marriage of Horner*, 151 Wn.2d 884, 893-94, 93 P.3d 124 (2004). A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices given the facts and applicable law, is not supported by the record, or is based on an incorrect standard or the facts do not meet the requirements of the correct standard. *Id.* at 894.

We apply the two-step standard of review for a trial court's findings of fact and conclusions of law: first, we determine if the trial court's findings of fact were supported by substantial evidence in the record, and if so, we next decide whether those findings of fact support the trial court's conclusions of law. *Landmark Development, Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). "'Substantial evidence exists if the record contains sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986), *cert. dismissed*, 479 U.S. 1050 (1987)), *review denied*, 148 Wn.2d 1023, (2003). Unchallenged findings of fact are verities on appeal. *In re Marriage of Laidlaw*, 2 Wn. App. 2d 381, 386, 409 P.3d 1184, *review denied*, 190 Wn.2d 1022 (2018). We review a trial court's conclusions of law de novo. *Casterline v. Roberts*, 168 Wn. App. 376, 381, 284 P.3d 743 (2012).

"The fact that a court designates its determination as a 'finding' does not make it so if it is in reality a conclusion of law. Under Washington practice, a conclusion of law mislabeled as a finding, will be treated as a conclusion." *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197, 584 P.2d 968 (1978). A finding of fact is defined as "an 'assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.'" *Id.* (quoting *Leschi v. Highway Comm'n.*, 84 Wn.2d 271, 283 525

P.2d 774 (1974)). "If a determination concerns whether the evidence shows that something occurred or existed, it is properly labeled a finding of fact, but if a determination is made by a process of legal reasoning from, or of interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law." *Id.* at 197 n.5.

B.      BAD FAITH

Cann argues that the trial court abused its discretion by finding that she acted in bad faith. However, Cann did not assign error to the trial court's finding of fact 5.e as required by RAP 10.3(g). Therefore, Cann has not properly challenged the trial court's finding.

Regardless, Cann's argument is unpersuasive. Cann's stated reasons for the move were contradicted by the evidence. And finding of fact 5.e documents Cann's lack of candor with the court. Therefore, the trial court did not err in finding that Cann acted in bad faith, and Cann's argument fails.

C.      DETRIMENT DETERMINATION

1.      Written Order

Cann argues that the trial court erred when it denied her petition for relocation without finding that the detriment to the child outweighed the potential benefits in its oral ruling. Cann contends that while the trial court did not make a finding in its written order as to the detriment of the child, "the court entered the order as presented by the respondent who had added language about the detriment to the child, but that evidence was never presented at trial." Br. of Appellant at 6. We disagree.

The trial court's finding of fact 5 contains numerous findings about the detriment or harm that F.L.S. would experience if the relocation were permitted. *See* CP at 191 ("Based on the factors

listed below, the Court concludes that the planned move would cause more harm to the child than good to the child and the person who wants to move."). Although Cann argues that the trial court's written findings conflict with the trial court's oral ruling, the trial court's written findings control over any conflict with an oral decision. *Grundy v. Brack Family Trust*, 151 Wn. App. 557, 571, 213 P.3d 619 (2009), *review denied*, 168 Wn.2d 1007 (2010).

2. Detriment

Cann argues that the trial court "failed to list specific facts of each of the 11 factors as the facts pertain to the determination of the detriment of relocation outweighing the benefit of the relocation." Br. of Appellant at 7. Cann contends that "[t]he Court then went through the 11 factors and stated his displeasure with the actions of the mother that had nothing to do with the detriment and/or benefits from the relocation." Br. of Appellant at 6.

Here, whether or not the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person is the legal effect of the findings which support the 11 factors in RCW 26.09.520, and thus, is a conclusion of law. Therefore, we review the trial court's determination that the planned move would cause more harm to the child than good to the child and the Petitioner as a conclusion of law. *See Moulden & Sons, Inc.*, 21 Wn. App. at 197 n.5.

Finding of fact 5.a-5.k contain extensive, unchallenged findings that support the trial court's conclusion that relocation would cause more harm to F.L.S. than it would cause good for F.L.S. and Cann. These findings are verities on appeal. *Laidlaw*, 2 Wn. App. 2d at 386. Therefore, Cann's argument lacks merit.

11

D.      FAILURE TO GIVE NOTICE

Cann argues that the trial court erred "in its application of the law as whether the failure to give proper notice can be considered as a factor in determining if the detriment outweighs the benefit of the relocation." Br. of Appellant at 10. We disagree.

In finding of fact 5.a, the trial court relied on Cann's moving without providing proper notice to explain her current unstable situation. In finding of fact 5.c, the trial court referenced Cann's decision to move without proper notice to explain its finding that Cann disrupted contact with F.L.S. And the trial court referenced the timing of Cann's notice in finding of fact 5.e to show Cann was purposefully trying to prevent Solis from being able to file a timely objection.

Thus, while the trial court relied on, in part, Cann's failure to give proper notice to support its findings that Cann created an unstable, disruptive situation for F.L.P. and that Cann's reasons for moving were not given in good faith, the trial court did not consider the improper notice as a factor itself.

E.      MODIFIED PARENTING PLAN

Cann argues that the trial court erred when it modified the parenting plan without giving her the opportunity to forego relocating and to maintain the previous parenting plan.

RCW 26.09.260(6) states:

The court may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a relocation of the child. The person objecting to the relocation of the child or the relocating person's proposed revised residential schedule may file a petition to modify the parenting plan, including a change of the residence in which the child resides the majority of the time, without a showing of adequate cause other than the proposed relocation itself. A hearing to determine adequate cause for modification shall not be required so long as the request for relocation of the child is being pursued. In making a determination of modification pursuant to relocation of the child, the court shall first determine whether to permit or restrain the relocation of the child using the procedures and

standards provided in RCW 26.09.405 through 26.09.560. Following that determination, the court shall determine what modification pursuant to relocation should be made, if any, to the parenting plan or custody order or visitation order.

In *McDevitt*, the court upheld a modified parenting plan pursuant to a petition to relocate. *McDevitt v. Davis*, 181 Wn. App. 765, 326 P.3d 865, *review denied*, 181 Wn.2d 1018 (2014). McDevitt, the mother, filed a notice of intent to relocate from Hawaii to Colorado. *Id*. at 767. Davis, the father, filed a proposed modified parenting plan, pursuant to the relocation request. *Id*. McDevitt testified that she and the children had been living in Colorado since the time of the relocation request. *Id*. After the trial, the trial court approved the relocation and entered the father's proposed modified parenting plan. *Id*. at 773. McDevitt then moved to withdraw her intent to relocate and argued that the trial court had to abandon the parenting plan modification once she indicated her intent to return to Hawaii. *Id*. at 768. The court upheld the parenting plan modification because McDevitt had already relocated before the parenting plan had been modified, and the trial court had ruled on the parenting plan modification before McDevitt acted to withdraw her request to relocate. *Id*. at 772-73.

Here, like in *McDevitt*, Cann had already moved to Maple Falls at the time of her relocation request. And *after* the trial court denied relocation and modified the parenting plan accordingly, Cann's attorney asked *if* the trial court was going to change the parenting plan *if* Cann did not relocate. The trial court stated, "No, I'm changing it. I'm changing it. The parenting plan is what I just ordered." VRP (Oct. 22, 2019) at 258. Thus, the trial court had already ruled on the parenting plan modification before Cann asked *if* the trial court would deny the modification *if* she hypothetically did not relocate. Because Cann had already moved to Maple Falls at the time of her relocation request and the trial court modified the parenting plan prior to Cann's hypothetical

13

withdrawal of her request to relocate, the trial court did not err in modifying the parenting plan. Cann's argument fails.

F.    RECUSAL

1.    Judicial Canons

Cann argues that the trial court abused its discretion when the judge failed to recuse himself from the case pursuant to Judicial Canon, Rule 2.2 and Rule 2.3.

RAP 2.5(a) states, "The appellate court may refuse to review any claim of error which was not raised in the trial court." Here, Cann did not argue prior to this appeal that the trial court judge should have recused himself under Judicial Canon Rules 2.2 and 2.3. Therefore, we do not review this issue.

2.    RCW 4.12.050

Cann filed an "Affidavit of Prejudice" requesting the disqualification of Judge Harper of the Jefferson County Superior Court because Cann would be "unable to obtain a fair proceeding." CP at 124.

A party in a superior court proceeding is entitled to one change of judge upon timely filing an affidavit of prejudice. RCW 4.12.050, *State v. Dennison*, 115 Wn.2d 609, 619, 801 P.2d 193 (1990). RCW 4.12.050(1) states, "Any party to or any attorney appearing in any action or proceeding in a superior court may disqualify a judge from hearing the matter, subject to these limitations: . . . (b) In counties with only one resident judge, the notice of disqualification must be filed not later than the day on which the case is called to be set for trial."

Here, Jefferson County only has one resident judge. The trial setting date for the case was August 13, 2019. Cann filed the Affidavit of Prejudice on October 11, 2019. Because Jefferson

No. 54162-9-II

County only has one resident judge and Cann filed the notice of disqualification almost two months after the case was called to be set for trial, Cann's challenge fails.

ATTORNEY FEES ON APPEAL

A. CANN'S REQUEST FOR ATTORNEY FEES

Cann requests in a single sentence at the conclusion of her brief that this court award her attorney fees and costs. Cann fails to devote a separate section of her brief to her request for attorney fees. *See* RAP 18.1(b) ("The party must devote a section of its opening brief to the request for the fees or expenses."). And she fails to provide any argument or legal authority for her request. Therefore, we do not consider this issue.

B. SOLIS'S REQUEST FOR ATTORNEY FEES

Solis requests attorney fees incurred on appeal under RAP 18.9(a).

Under RAP 18.9(a), we can award attorney fees for the filing of frivolous appeals. "An appeal is frivolous when the appeal presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9, *review denied*, 175 Wn.2d 1016 (2012).

Here, the overwhelming evidence shows that the detrimental effect of the relocation outweighed the benefit of the change to F.L.S. and Cann. Further, Cann argued that the trial court should not have modified the parenting plan without giving her the opportunity to forego relocating and to maintain the previous parenting plan. But Cann had already relocated to Maple Falls, and she never moved to withdraw her petition for relocation. Cann also argued that the trial court judge should have recused himself pursuant to Judicial Canon Rules 2.2 and 2.3. But she never moved to disqualify the trial court judge under those rules. Therefore, Cann's appeal presented no

15

No. 54162-9-II

debatable issues on which reasonable minds could differ and was so lacking in merit that there was no possibility of reversal. *See Stiles*, 168 Wn. App. at 267. Thus, we award Solis attorney fees incurred on appeal under RAP 18.9(a).

CONCLUSION

We affirm the trial court's final orders denying the relocation petition and modifying the parenting plan. And we grant Solis's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Sutton, J.

16

GLASGOW, J. (dissenting in part)—I agree with the majority's decision to affirm. I dissent only because I disagree with the majority's decision to grant attorney fees on appeal.

As the majority explains, under RAP 18.9(a), this court can award attorney fees for the filing of frivolous appeals. Majority at 15. "An appeal is frivolous when the appeal presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *Id.* (citing *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012)).

Although Amy L. Cann does not prevail, I would not conclude that her appeal was frivolous in light of the high bar that frivolousness presents. I am also conscious that an unfortunate side effect of a too broad interpretation of frivolousness is the chilling effect that the risk of having to pay attorney fees can have on parents in future cases. Low income parents, especially, may forego an appeal to avoid the risk of being crippled by an attorney fees award.

In the area of family law, where trial judges are frequently called on to make difficult determinations about how to apply the law to particular facts, I am particularly reluctant to be too quick to conclude that a parent raised no debatable issue on appeal. Although our standard of review in these cases is generally appropriately deferential to the trial court making these difficult decisions, and the trial court here did not err, I would not conclude that Cann raised no debatable issue at all on which reasonable minds could differ. At the very least, I would conclude the mother raised debatable issues as to whether she acted in bad faith and whether the trial court appropriately modified the parenting plan despite her ultimate decision not to relocate.

Therefore, I respectfully dissent in part.

Glasgow, J.

17