# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of:<br><br><br>CHRISTIAN DELBOSQUE,<br><br>Petitioner. | No.  49792-1-II<br><br><br>PUBLISHED OPINION |

SUTTON, J. — In 1994, a jury found Cristian Delbosque guilty of aggravated first degree murder committed when he was 17 years old.  The superior court imposed a life sentence without the possibility of parole.  In 2016, under RCW 10.95.030 (the *Miller*-fix statute)[1] and RCW 10.95.035, the superior court held an evidentiary hearing and entered an order imposing a minimum term of 48 years with a maximum term of life imprisonment.

Delbosque challenges his judgment and sentence, arguing that the superior court's findings of fact are unsupported by substantial evidence and that the superior court failed to adequately consider the diminished culpability of youth as required by the *Miller*-fix statute when setting the

---

[1] In 2014, the Washington legislature responded to the United States Supreme Court's ruling in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), by enacting the *Miller*-fix statute.  *See* RCW 10.95.030(3)(a).  The *Miller*-fix statute requires that a sentencing court take into account the factors identified in *Miller* before sentencing a 16- to 18-year-old offender to life without parole or early release.  RCW 10.95.030(3)(a)(ii), (b).  The legislature also enacted a statute that requires that juveniles sentenced before 2014 to life without parole or early release be resentenced under the *Miller*-fix statute.  RCW 10.95.035(1).

minimum term. We hold that the superior court's findings regarding Delbosque having an attitude towards others reflective of the underlying crime, and of Delbosque's permanent incorrigibility and irretrievable depravity are not supported by substantial evidence. We further hold that the superior court failed to comply with the *Miller*-fix statute when setting Delbosque's minimum term. Thus, Delbosque's restraint is unlawful. Accordingly, we grant his Personal Restraint Petition (PRP), reverse the judgment and sentence, and remand for resentencing.

FACTS

In 1994, Delbosque was convicted of aggravated first degree murder for the murder of a young woman. Delbosque was sentenced to a mandatory sentence of life without parole. Delbosque was 17 years old when he committed the murder.

In June 2016, the superior court conducted an evidentiary hearing to set a minimum term of confinement under the *Miller*-fix statute and RCW 10.95.035(1). During this hearing, the superior court heard extensive testimony from Delbosque's friends and relatives regarding his difficult and troubled childhood. The State presented testimony from the officer who investigated the murder and victim impact testimony.

The State also presented evidence from Robert Schreiber, the unit supervisor of the prison where Delbosque was incarcerated. Schreiber testified that Delbosque was currently classified as medium security and would qualify for minimum security except for the term of his sentence and an immigration detainer. Schreiber testified that between 1995 and 2008, Delbosque had 10 prison infractions, and that Delbosque's last infraction was in 2010. The 2010 infraction asserted that Delbosque used his leadership position in a gang to attempt to arrange an assault on another inmate.

Delbosque presented the testimony of two experts. Dr. Manuel Saint Martin evaluated Delbosque for past and current mental health issues. Dr. Saint Martin diagnosed Delbosque with borderline intellectual functioning and alcohol dependence at the time he committed the crime. Dr. Saint Martin also testified that he believed the murder likely involved "some sort of psychotic episode due to alcohol." III Verbatim Report of Proceeding (VRP) at 423. In Dr. Saint Martin's opinion, Delbosque's dependence on alcohol played a significant role in the murder.

Dr. Sarah Heavin testified specifically regarding whether youth was a factor in Delbosque's case. Dr. Heavin testified that the major area in which youthfulness affects behavior is executive functioning because of the youth's underdeveloped frontal lobe. Generally, this results in juveniles being more likely to engage in risk-taking behavior and more susceptible to peer pressure or peer approval. Dr. Heavin opined that Delbosque was even more likely to exhibit these behaviors because of his lower intellectual functioning and traumatic upbringing. Specifically, Dr. Heavin testified that "youthfulness, combined with trauma, made him less likely to monitor his own behavior responsibly, inhibit aggressive behavior." III VRP at 513. In summary, Dr. Heavin testified,

> Well, I'm not suggesting that Mr. Delbosque's homicide be excused. I'm suggesting that the [c]ourt respectfully consider the effect that his early childhood had on his brain development. It's my opinion that his relative risk taking was greater than a typically developing youth without those same risk factors, which placed him in the apartment drinking alcohol excessively with a gun. And once essentially this string of crimes that were committed that night started, he had more difficulty than the average teen behaving in a reasonable way.

III VRP at 537-38.

After the hearing, the superior court entered the following findings of fact:

3

2.  **Childhood and Life Experiences.**  Mr. Delbosque endured a very difficult childhood up until the time of the murder, including a life with little nurturing, limited nutrition, and much chaos.  Many risk factors are associated with the upbringing and development of Mr. Delbosque, including utero exposure to alcohol, his mother's death at an early age, a life of impoverishment, and both sexual and physical abuse as a child.

3. **Degree of Responsibility.**  Mr. Delbosque is entirely responsible for the murder.  No other person assisted him in the design or implementation of the murder.  Alcohol dependence was not a predominate factor in the murder.  Anger and a desire to conceal guilt were the predominate factors.

4. **Mr. [Delbosque]'s chances of becoming rehabilitated and the reflection of transient immaturity.**  Mr. Delbosque committed an extraordinarily brutal and vicious murder of a minor victim.  Mr. Delbosque does not suffer from any diagnosable mental illness, but has been diagnosed with alcohol dependence.  Mr. Delbosque continues to exhibit an ongoing attitude to others that is reflective of Mr. Delbosque's underlying murder where he is choosing to advance his needs, even resorting to violence, over the well-being of others.  This reflects an attitude that a third party's well-being is insignificant and expendable in comparison to his needs.  There is no identified program or treatment presented to deal with this negative attribute.

Clerk's Papers (CP) at 30-31.  Based on its findings, the superior court concluded,

The brutal murder that Mr. Delbosque committed in October of 1993 was not symptomatic of transient immaturity, but has proven over time to be a reflection of irreparable corruption, permanent incorrigibility, and irretrievable depravity.

CP at 31.[2]  The superior court set a minimum term of 48 years with a maximum term of life imprisonment.

---

[2] Delbosque argues that the superior court mislabeled this finding as a conclusion of law.  Br. of Appellant at 17.  Findings of fact are determinations of whether the evidence shows that something existed or occurred.  *Casterline v. Roberts*, 168 Wn. App. 376, 382, 284 P.3d 743 (2012).  We agree.  We treat findings of fact, labeled as conclusions of law, as findings of fact when challenged on appeal.  *State v. Ross*, 141 Wn.2d 304, 309-10, 4 P.3d 130 (2000).  Because the superior court's conclusion of law relates to whether a fact existed, we treat it as a finding of fact.

ANALYSIS

I. PROPER REVIEW OF DELBOSQUE'S CLAIMS

Delbosque filed a direct appeal of the superior court's order imposing the new minimum term. However, the proper method for Delbosque to seek review of the superior court's order is a PRP. *State v. Bassett*, 198 Wn. App. 714, 721, 394 P.3d 430 (2017), *aff'd*, ___ Wn. App. ___, 428 P.3d 343 (October 18, 2018). As a result, we requested supplemental briefing to allow Delbosque to address whether the superior court's order satisfied the requirements for relief from restraint under RAP 16.4. Order Requesting Supplemental Briefing at 2 (April 17, 2018).

In his supplemental brief, Delbosque argues that we should review his direct appeal of the superior court's order imposing the new minimum term of incarceration as a PRP.[3] We agree.

RCW 10.95.035 provides for certain juvenile offenders sentenced to life without parole or release before June 1, 2014, to be resentenced consistent with the *Miller*-fix statute. *Bassett*, 198 Wn. App. at 718, n.6. RCW 10.95.035(3) also provides that "[t]he court's order setting a minimum term is subject to review to the same extent as a minimum term decision by the parole board before July 1, 1986." Review of a minimum term decision by the parole board before July 1, 1986, was obtained by filing a PRP. *Bassett*, 198 Wn. App. at 721.

---

[3] Delbosque also argues that RCW 10.95.035(3) is unconstitutional because it violates the guaranteed right to appeal under article I, section 22 of the Washington Constitution. The State declined to respond to Delbosque's argument and instead argues that we should decline to address it because it was raised for the first time in the supplemental briefing and was outside the scope of this court's order for supplemental briefing. Generally, this court will not consider an argument raised for the first time in supplemental briefing. *State v. Krajeski*, 104 Wn. App. 377, 387, 16 P.3d 69 (2001). Accordingly, we do not consider Delbosque's argument that RCW 10.95.035(3) is unconstitutional.

"In order to facilitate review of a minimum term decision on the merits, we may disregard a filing defect and treat a direct appeal as a PRP." *Bassett*, 198 Wn. App. at 721-22. Although Delbosque filed a direct appeal of the superior court's order imposing the new minimum term of incarceration, we disregard this procedural defect and review Delbosque's appeal as a PRP.

## II. MINIMUM TERM SENTENCE

Delbosque argues that the superior court's findings of fact are unsupported by substantial evidence and that the superior court failed to adequately consider the diminished culpability of youth as required by the *Miller*-fix statute when setting the minimum term of his sentence. We hold that (1) the superior court's findings regarding Delbosque having an attitude towards others reflective of the underlying crime, and of Delbosque's permanent incorrigibility and irretrievable depravity are not supported by substantial evidence, and (2) the superior court failed to comply with the *Miller*-fix statute when setting the minimum term.

### A. LEGAL PRINCIPLES

"To obtain relief under a PRP where no prior opportunity for judicial review was available, a petitioner must show that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c)." *Bassett*, 198 Wn. App. at 722. A petitioner is restrained under RAP 16.4(b) when he is confined. Under RAP 16.4(c)(2), restraint is unlawful when "[t]he conviction was obtained or the sentence or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government was imposed or entered in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." Here, it is undisputed that Delbosque is restrained.

We review challenged findings of fact for substantial evidence. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). "Substantial evidence" is "'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (*quoting State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999). We may look to the superior court's oral ruling to interpret its written findings of fact. *State v. B.J.S.*, 140 Wn. App. 91, 99, 169 P.3d 34 (2007). Findings of fact that contain errors are subject to harmless error analysis. *State v. Banks*, 149 Wn.2d 38, 43, 65 P.3d 1198 (2003).

In 2012, the United States Supreme Court held in *Miller v. Alabama* that it was unconstitutional to impose mandatory life without parole sentences for juvenile homicide offenders. 567 U.S. at 489. The Supreme Court noted that juvenile offenders have diminished culpability and are less deserving of the most severe punishments because they have a lack of maturity and an underdeveloped sense of responsibility, are more vulnerable to outside pressures and negative influences, and their traits are less likely to be evidence of irretrievable depravity. *Miller*, 567 U.S. at 471. The *Miller* Court required that sentencing courts consider the "mitigating qualities of youth," including an offender's youth and attendant characteristics, before imposing a particular penalty. 567 U.S. at 476. These attendant circumstances include: chronological age, immaturity, failure to appreciate risks and consequences, the circumstances of the homicide offense, and the possibility of rehabilitation. *Bassett*, 198 Wn. App. at 725.

Before *Miller*, Washington law imposed a mandatory sentence of life without the possibility of release or parole for an offender convicted of aggravated first degree murder, regardless of the offender's age. *Bassett*, 198 Wn. App. at 726. In response to *Miller*, our legislature enacted the *Miller*-fix statute, which provides:

7

(3)(a)(i) Any person convicted of the crime of aggravated first degree murder for an offense committed prior to the person's sixteenth birthday shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of twenty-five years.

(ii) Any person convicted of the crime of aggravated first degree murder for an offense committed when the person is at least sixteen years old but less than eighteen years old shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of no less than twenty-five years. A minimum term of life may be imposed, in which case the person will be ineligible for parole or early release.[4]

(b) In setting a minimum term, the court must take into account mitigating factors that account for the diminished culpability of youth as provided in [*Miller*] including, but not limited to, the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated.

RCW 10.95.030.

Our legislature also enacted RCW 10.95.035(1), which states:

A person, who was sentenced prior to June 1, 2014 . . . to a term of life without the possibility of parole for an offense committed prior to their eighteenth birthday, shall be returned to the sentencing court or the sentencing court's successor for sentencing consistent with [the *Miller*-fix statute].

B. FINDINGS OF FACT

Delbosque argues that the following four findings of fact in the superior court's order are not supported by substantial evidence: (1) alcohol dependence was not a predominant factor in the murder, (2) Delbosque does not suffer from a diagnosable mental illness, (3) Delbosque continues to demonstrate an attitude towards others reflective of the underlying crime, and (4) the murder reflected permanent incorrigibility and irretrievable depravity. The superior court's findings

---

[4] Our Supreme Court recently held that this subsection of RCW 10.95.030 is unconstitutional under the Washington Constitution because sentencing juvenile offenders to life without parole or early release constitutes cruel punishment. *State v. Basset*, 428 P.3d 343 (2018).

8

regarding alcohol dependence and mental illness are supported by substantial evidence, but the remaining findings are not supported by substantial evidence.

### 1. Alcohol Dependence

The superior court found that "[a]lcohol dependence was not a predominate factor in the murder." CP at 12. Dr. Saint Martin testified that he believed that alcohol induced psychosis explained much of the seemingly bizarre behavior during and after the murder. However, the superior court, in its oral ruling, weighed that opinion against the evidence at the crime scene and determined that the murder was not the result of alcohol induced psychosis. Therefore, to this extent, the superior court's finding is supported by substantial evidence.

### 2. Mental Illness

The superior court also found that Delbosque does not suffer from diagnosable mental illness but that he has been diagnosed with alcohol dependence. This finding is supported by substantial evidence. Dr. Saint Martin did testify that Delbosque had a diagnosis of alcohol dependence and borderline intellectual functions. Dr. Saint Martin testified that Delbosque did not suffer from any personality disorders such as schizophrenia, hallucinations, or sexual deviance. Therefore, this finding, within the context it was made, is supported by substantial evidence.

### 3. Pattern of Behavior

The superior court also found that "Delbosque continues to exhibit an ongoing attitude to others that is reflective of Mr. Delbosque's underlying murder." CP at 12. The superior court noted in its oral ruling that, while in prison, Delbosque received an infraction in 2010 for his alleged involvement in gang activity.

Although the superior court found that Delbosque had an ongoing attitude reflective of the murder, the court's only example of this attitude was Delbosque's 2010 infraction for attempting to arrange an assault, which occurred six years prior to the evidentiary hearing. Therefore, to whatever extent Delbosque's infraction history does exhibit a pattern related to the murder he committed, that pattern is not continuing or current. Therefore, the superior court's finding is not supported by substantial evidence.

4. Irreparable Corruption

The superior court also found that Delbosque's crime was a reflection of "irreparable corruption, permanent incorrigibility, and irretrievable depravity." CP at 12. In its oral ruling, the superior court stated that Delbosque's "predatory view ha[d] extended well into his adult life." IV VRP at 660. The court also noted that the murder "was not symptomatic of transient immaturity, but has proven over time to be a reflection of irreparable corruption, permanent incorrigibility, and irretrievable depravity." IV VRP at 661.

As discussed above, the superior court considered that Delbosque received an infraction in 2010. But his infraction does not support the notion that Delbosque continues to exhibit an attitude reflective of the murder. Likewise, Delbosque's infraction is not evidence of irreparable corruption proven over time. Delbosque had been in prison for approximately 15 years before the 2010 infraction, and the infraction took place 6 years before the evidentiary hearing. Accordingly, the superior court's finding is not supported by substantial evidence.

C. DIMINISHED CULPABILITY OF YOUTH

Delbosque next argues that the superior court erred in setting the minimum term of his sentence because the court failed to properly consider the sentencing criteria in the *Miller*-fix

10

statute. We agree. While the superior court clearly understood what it was required to consider, its findings demonstrate that it failed to meaningfully consider the evidence within the proper context of the diminished culpability of youth as required by the *Miller*-fix statute. Accordingly, the superior court failed to comply with the requirements of the *Miller*-fix statute in setting Delbosque's minimum term.

Here, the superior court made specific findings regarding Delbosque's age, childhood and life experience, degree of responsibility, and chances of becoming rehabilitated. The superior court did not, however, consider the designated factors "that account for the diminished culpability of youth," as required by the *Miller*-fix statute. RCW 10.95.030(3)(b).

*Miller* held that children are constitutionally different from adults for purposes of sentencing, explaining that because juveniles have diminished culpability and greater prospects for reform, "'they are less deserving of the most severe punishments.'" 567 U.S. at 471 (*quoting Graham v. Florida,* 560 U.S. 48, 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)). In making this determination, the Court relied on three gaps between children and adults: children display a lack of maturity and an underdeveloped sense of responsibility, they are more vulnerable to outside pressures and negative influences, and their traits are less likely to be evidence of irretrievable depravity. *Miller*, 567 U.S. at 471.

*Miller* also determined that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. 567 U.S. at 472. Because the heart of the retribution rationale relates to an offender's blameworthiness, the case for retribution is not as strong with a minor as with an adult. *Miller*, 567 U.S. at 472. Nor can deterrence do the work in this context, because the same

characteristics that render juveniles less culpable than adults—their immaturity, recklessness, and impetuosity—make them less likely to consider potential punishment. *Miller*, 567 U.S. at 472. Similarly, deciding that a juvenile offender forever will be a danger to society would require making a judgment that the juvenile is incorrigible, but incorrigibility is inconsistent with youth. *Miller*, 567 U.S. at 472-73. For the same reason, rehabilitation cannot justify a sentence of life without parole because it forswears altogether the rehabilitative ideal and reflects an irrevocable judgment about a juvenile offender's value and place in society, at odds with a child's capacity for change. *Miller*, 567 U.S. at 473.

Both the *Miller* holding and Dr. Heavin's testimony clearly establish that the diminished culpability of youth relates to juveniles underdeveloped executive brain functioning, including increased risk taking, failure to appreciate consequences and responsibility, and susceptibility to outside influences. Dr. Heavin also testified that Delbosque's childhood and life experiences and degree of responsibility exacerbated the poor executive functioning characteristic of youth. In this case, the superior court did not address how any of the factors it analyzed related to the poor executive functioning or increased risk taking that Dr. Heavin identified as reflective of Delbosque's diminished culpability.

The superior court also failed to address the greater prospects for reform from a crime committed while Delbosque was a child. This failure is shown by our holdings above that Delbosque's infraction history does not exhibit a continuing or current pattern of behavior related to the murder he committed. Nor are his infractions evidence of irreparable corruption proven over time. The court's rationale is also inconsistent with *Miller*'s recognition that incorrigibility is inconsistent with youth. 567 U.S. at 472-73.

In setting Delbosque's minimum term, the superior court failed to comply with the *Miller*-fix statute by failing to specifically consider the "diminished culpability of youth." Because the superior court failed to comply with the *Miller*-fix statute, Delbosque shows that his restraint is unlawful.

## CONCLUSION

We hold that the superior court's findings regarding an attitude towards others reflective of the underlying crime, and of permanent incorrigibility and irretrievable depravity are not supported by substantial evidence. We further hold that the superior court failed to comply with the *Miller*-fix statute when setting the minimum term. Accordingly, Delbosque's restraint is unlawful because the superior court failed to comply with the *Miller*-fix statute in sentencing him. Thus, we grant the PRP, reverse the judgment and sentence, and remand for resentencing.

SUTTON, J.

We concur:

HANSON, P.J.

BJORGEN, J.

13